[Cite as *State v. Allsup*, 2011-Ohio-404.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,                              CASE NO. 6-10-09

    PLAINTIFF-APPELLEE,

  v.

JOSEPH HENRY ALLSUP, JR.,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20092079 CRI

**Judgment Affirmed**

Date of Decision:  January 31, 2011

APPEARANCES:

    *Marc S. Triplett,* **for Appellant**

    *Maria Santo,* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, Joseph Henry Allsup, Jr., brings this appeal from the judgment of the Court of Common Pleas of Hardin County finding him guilty of failure to comply with an order or signal of a police officer, felonious assault on a peace officer with a deadly weapon, vandalism, and operating a vehicle while under the influence. For the reasons set forth below, the judgment is affirmed.

{¶2} On April 3, 2009, just past midnight, Officer Deckling of the Kenton Police Department stopped at Jumpin' Jim's carry-out in Kenton to make a personal purchase while on duty. Officer Deckling was dressed in the standard-issued police uniform and was driving a marked police cruiser. While Officer Deckling was making his purchase, he recognized another customer as Wayne Allsup ("Wayne") in the carry-out buying beer. Officer Deckling recalled that there may be an active warrant out for Wayne's arrest. Officer Deckling returned to his police cruiser and radioed a request for dispatch to confirm whether there was indeed an active warrant for Wayne's arrest.

{¶3} From his cruiser, Officer Deckling observed that Wayne had entered into the passenger side of an older model pick-up truck parked in the parking lot of the carry-out. The driver of the truck was Wayne's brother, Joseph Allsup, Jr. ("Allsup"). The truck remained parked while Wayne conversed with another man through the passenger side widow.

{¶4} Upon dispatch's confirmation that there was an active warrant for Wayne's arrest, Officer Deckling approached the parked truck on the passenger side and informed Wayne that there was a warrant for his arrest and that he needed to exit the truck. Wayne then looked at Allsup and said, "Let's go, dude." Allsup put the truck in reverse and left the parking lot. Officer Deckling returned to his vehicle and began to follow the pick-up truck with the overhead lights and siren on the cruiser activated.

{¶5} After pursuing the pick-up truck a mile south of town, Officer Deckling noticed that the truck had stopped in the middle of the road. Officer Deckling stopped his vehicle approximately fifteen to twenty feet behind the truck. Allsup then put his truck into reverse and rammed Officer Deckling's police cruiser. The impact of the two vehicles crumpled the hood on driver's side of the police cruiser and disabled the driver's side headlight. Officer Deckling suffered an injury to his leg as a result of the collision. However, Officer Deckling was able to continue the pursuit of Allsup's truck because impact of the collision failed to totally disable his vehicle. Officer Deckling radioed dispatch for assistance. Additional vehicles from both the Kenton Police Department and the Hardin County Sheriff's Office joined the pursuit.

{¶6} While Officer Deckling followed the truck, Wayne began throwing various items, which included beer bottles, metal objects and a rake, out of the

passenger side window in the direction of Officer Deckling's cruiser. Officer Deckling had to swerve the cruiser to avoid hitting the projectiles. Further down the road, Sergeant Lee of the Hardin County Sheriff's Office had positioned himself ahead of Allsup's pick-up truck. As the truck approached Sergeant Lee's location, Sergeant Lee threw out a set of stop sticks to deflate the tires on Allsup's truck. Once the truck ran over the stop sticks, the passenger side front tire deflated. However, the truck continued down the road at a high-rate of speed, leaving gouges in the road from the wheel. Allsup then turned the truck into a residence belonging to one of his cousins and parked the truck. Law enforcement surrounded the truck and forcibly pulled Allsup and Wayne from the pick-up truck. Officer Deckling immediately noticed a strong odor of alcohol on Allsup's person and further observed that Allsup had defecated in his pants during the incident.

{¶7} Allsup and Wayne were placed under arrest and taken into custody. On May 5, 2009, a Hardin County Grand Jury indicted Allsup on following charges: failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B),(C)(5)(a)(ii), a felony of the third degree; felonious assault with a deadly weapon with an additional specification that the victim was a peace officer in violation of R.C. 2903.11(A)(2),(D)(1), a felony of the first degree; complicity to vehicular vandalism in violation of R.C. 2923.03(A)(2) and R.C.

2909.09(B)(1), a felony of the fourth degree; vandalism in violation of R.C. 2909.05(B)(2), a felony of the fifth degree; driving under suspension or in violation of license restriction, in violation of R.C. 4510.11(A), a misdemeanor of the first degree and; operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them with the second offense being committed within six years, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

{¶8} On May 18, 2009, Allsup entered a plea of not guilty by reason of insanity, ("NGRI"), to all the charges listed in the indictment. Allsup also requested a competency evaluation. The trial court accepted Allsup's plea and arranged for a competency evaluation to take place. At a subsequent hearing, Allsup was declared competent to stand trial. Allsup filed a motion for an independent evaluation of his sanity and competency, which was granted by the trial court. The independent examiner also found Allsup competent to stand trial. At the September 15, 2009 competency hearing, Allsup requested a second independent evaluation. The trial court denied Allsup's motion for a second independent examiner and found him competent to stand trial.

{¶9} On October 20, 2009, the prosecution moved to dismiss the charge of complicity to vehicular vandalism which was granted by the trial court.

{¶10} On February 17, 2010, Allsup filed a motion for the appointment of a neuropsychologist to perform further evaluations regarding his NGRI plea. In his motion, Allsup argued that his NGRI defense was based upon a mental defect or injury resulting from a head injury he suffered when a tree limb fell on him weeks prior to the incident resulting in charges listed in the indictment. Specifically, Allsup claimed that he suffered from black-outs as a result of this injury, and that a neuropsychologist could testify that he suffered from one of these black-outs when the alleged offenses were committed. The prosecution filed a motion opposing Allsup's request for a neuropsychologist. The trial court granted Allsup's motion, in part, allowing his attorney leave to have ex-parte communications with a physician to determine if further evaluations of Allsup were necessary.

{¶11} On March 3, 2010, the prosecution filed proposed jury instructions seeking to include instructions on consciousness of guilt, voluntary intoxication, and that a motor vehicle may be considered a deadly weapon. The prosecution also moved to dismiss the charge of driving under suspension in violation of license restriction, and to strike the language from the OVI charge which specified that the offense was the second within six years. The trial court subsequently granted the prosecution's motions.

{¶12} On March 16, 2010, the prosecution filed a motion in limine seeking to exclude testimony and medical records concerning Allsup's head injury. On

March 17, 2010, Allsup filed a motion in limine to exclude the specific facts surrounding Wayne's jury conviction a month earlier on the related offenses.

{¶13} On March 18, 2010, a pretrial hearing was held and the trial court ruled on the pending motions. The same day, the case proceeded to a jury trial and the jury returned a guilty verdict on each charge. On May 13, 2010, the trial court sentenced Allsup to serve ten years and six months in prison. Specifically, the trial court imposed a three-year prison term for the failure to comply with the order or signal of a police officer, and a seven-year prison term for the felonious assault on a peace officer. The trial court ordered each prison term to be served consecutively. The trial court also imposed six-month prison terms for the vandalism and OVI offenses with the terms to run concurrently to each other, but consecutively to the ten year term imposed on the prior counts.

{¶14} It is from this conviction and sentence that Allsup now appeals, raising the following assignments of error for our review.

### First Assignment of Error

**The trial court erred when it excluded the testimony *in toto* of Kathleen Tharp, Steven Rumer, and Tim Shoffer, and a portion of the testimony of Appellant.**

### Second Assignment of Error

**The trial court erred when it overruled Appellant's objection to the jury instruction with respect to the defense of intoxication.**

**Third Assignment of Error**

**The trial court erred when it denied Appellant's motion for acquittal.**

**Fourth Assignment of Error**

**The trial court erred when it denied Mr. Allsup's motion to exclude Juror Grappy for cause.**

**Fifth Assignment of Error**

**The trial court erred when it imposed a sentence of ten years of imprisonment.**

*First Assignment of Error*

{¶15} In his first assignment of error, Allsup argues that the trial court erred in partially excluding his testimony and the testimony of three other non-expert witnesses, Kathleen Tharp, Steven Rumer and Tim Shoffer. Allsup maintains that the excluded testimony was essential in establishing his defense that he suffered from a black-out at the time of the incident and had no memory of committing the offenses.

{¶16} The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 34. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d

151, 157, 404 N.E.2d 144. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio St. Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶17} At trial, Allsup testified that, weeks prior to the incident resulting in the charges, he was hit in the head with a tree limb which caused him to suffer from severe lapses in his memory. Allsup maintained that he suffered from memory loss at the time of the incident on April 3, 2009, and had no recollection of the police chase and surrounding events. At a pretrial hearing, the trial court ruled to exclude evidence of Allsup's head injury on the basis that it improperly attempted to establish a diminished capacity defense, and simply served to mislead the jury. During the trial, the court excused the jury and allowed Allsup to proffer the excluded testimony concerning his memory loss.

{¶18} Allsup proffered his own testimony indicating that sometime in late January or early February of 2009, some eight weeks prior to the incident in question, he suffered a head injury when a tree limb fell on his head. Allsup stated that he sought medical attention at Lima Memorial Hospital where a CAT scan and MRI were performed on his head and neck. Allsup recalled that he was seen twice by Nurse Practitioner, Kathleen Tharp, regarding this injury. Allsup stated that several times after the injury he would forget having a telephone conversation or have no memory of specific events. Allsup then stated that he believed he was

either suffering from a black-out or in shock during the police chase on April 3, 2009.

{¶19} The defense then proffered the testimony of Kathleen Tharp. Tharp testified that she had seen Allsup on February 16, 2009, in the Emergency Room of Lima Memorial Hospital. Tharp testified that Allsup stated that he had been hit on the head and neck with a fallen tree limb approximately two weeks earlier. However, Tharp recalled that Allsup complained of mostly neck pain and did not mention any occurrences of black-outs or loss of consciousness. Tharp saw Allsup again for a second time to go over the results of the MRI with him. Tharp stated that the results of the MRI revealed that Allsup had suffered a neck injury, but there was no indication of neurological trauma. Tharp further testified that nothing in the medical records indicated that Allsup suffered from loss of consciousness as a result of this injury.

{¶20} The defense also proffered the testimony of Steven Rumer. Rumer testified that he had bought a dump truck from Allsup in the winter of 2009. Rumer recalled that Allsup explained he had suffered from an injury which required him to give up his tree-trimming business. However, Rumer stated that Allsup never told him that he specifically suffered from a head or neck injury. Rumer also admitted that he had no personal knowledge concerning the nature of Allsup's injury.

{¶21} The final proffered testimony presented by the defense was that of Tim Shoffer. However, Shoffer failed to appear in court to proffer his testimony despite being subpoenaed. Instead, defense counsel summarized the testimony that he sought to elicit from Shoffer which, in essence, recounted a specific instance when Allsup had a telephone conversation with Shoffer where Allsup spoke harshly to Shoffer and used profanity. Defense counsel explained that Shoffer would testify that when he spoke to Allsup at a later time, Allsup had no recollection of the telephone conversation or the negative manner in which he spoke to Shoffer. Defense counsel also sought to admit Shoffer's testimony to corroborate Allsup's statements that he left the tree-trimming business as a result of a tree limb falling on his head.

{¶22} Allsup argues that the excluded evidence was essential in establishing that he suffered from a black-out at the time of the offense and therefore, had no memory of the events that occurred. The Eleventh District Court of Appeals aptly noted the following regarding the application of the so-called "blackout defense":

> **The blackout defense is not available in every instance where the defendant cannot remember what occurred. Blackout or unconsciousness is a defense only where such condition is involuntary and such involuntary condition prevented the defendant from taking action that he or she is legally required to take under the circumstances or, possibly, in situations where the unconsciousness or blackout prevents a defendant from forming a specific intent. In the latter circumstance, the**

**evidence must establish that the defendant was unconscious and acted involuntarily. A defendant's mere failure to remember what happened does not constitute such evidence.**

*State v. Cutlip* (June 15, 2001), 11 Dist. No. 99-L-149, *7.

{¶23} Here, the proffered testimony failed to demonstrate that Allsup was unconscious and acted involuntarily when he was involved in the police chase on the morning of April 3, 2009. Therefore, Allsup's testimony that he could not remember the incident, standing alone, was insufficient to demonstrate that he lacked the ability to form a specific intent to adequately establish a "blackout defense." See *State v. Gutierrez* (Sept. 21, 1995), 3rd Dist. No. 5-95-10, *4 (stating the trial court correctly held that a blackout instruction was not warranted because there was no evidence that the defendant was unconscious; rather the defendant testified that he could not remember anything).

{¶24} Moreover, the proffered testimony from the other three non-expert witnesses also failed to support Allsup's contention that he suffered from a blackout *at the time he committed the offenses listed in the indictment.* Therefore, the proffered testimony failed to achieve Allsup's intended purpose to establish that he suffered from a black-out during the police chase and could not have formed the specific intent required to prove the charges against him. Accordingly, because the proffered testimony served no other purpose, we find no error in the

trial court's decision to exclude the proffered evidence on the basis that the testimony was both irrelevant and could potentially be misleading to the jury.

{¶25} Allsup's first assignment of error is overruled.

*Second Assignment of Error*

{¶26} In his second assignment of error, Allsup maintains that the trial court erred when it instructed the jury on voluntary intoxication. Allsup argues that because he never asserted intoxication as a defense, the instruction was superfluous and only served to detract from his credibility. Specifically, Allsup contends that the trial court's instruction on intoxication compromised his asserted defense that he suffered from a black-out during the incident by causing the jury to believe that his black-out was attributable to alcohol rather than to a head injury.

{¶27} A trial court's decision to give a jury instruction is within its discretion, and we will not reverse such a decision absent an abuse of that discretion. *State v. Lightner*, 3d Dist. No. 6-09-02, 2009-Ohio-4443, ¶ 11, citing *State v. Guster* (1981), 66 Ohio St.2d 266, 271. An abuse of discretion connotes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Nagle* (2000), 11th Dist. No. 99-L-089, 2000 WL 777835, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id*.

{¶28} The instruction in question was included as a part of the introductory instructions to the jury, and appeared prior to giving the instructions on each count. The contended instruction stated as follows:

> **Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense.**
>
> **Intoxication includes, but is not limited to, intoxication resulting from the ingestion of alcohol, a drug, or alcohol and a drug.**

(Jury Instructions, p. 2).

{¶29} Upon reviewing this specific charge on voluntary intoxication within the context of the entire jury instructions, it is evident that the purpose of this instruction was not to charge the jury on the defense of intoxication, as Allsup contends, but rather to instruct the jury on culpability for criminal liability pursuant to R.C. 2901.21. The language of the instruction on voluntary intoxication tracks verbatim a significant portion of statutory language contained in R.C. 2901.21(C), (D)(4).

{¶30} In the present case, the prosecution had to prove that Allsup acted purposely as an element of the failure to comply with the order or signal of a police officer offense, and that Allsup acted knowingly as elements of the felonious assault of a peace officer and vandalism offenses. Accordingly, the instruction was given by the trial court to correctly inform the jury that they were

precluded from considering whether Allsup was intoxicated when determining if he had formed the requisite intent and acted purposely and knowingly when the offenses were committed.

{¶31} Moreover, we cannot conclude, as Allsup asserts, that the trial court's instruction on voluntary intoxication compromised his defense that he suffered from a black-out due to a prior head injury during the incident which resulted in charges listed in the indictment. In light of our determination in the first assignment of error that Allsup failed to present any evidence to adequately establish a "black-out defense," we find his contention that the instruction on voluntary intoxication prejudiced his defense is without merit.

{¶32} At most, the instruction may have insinuated to the jury that Allsup was intoxicated at the time of the incident. Arguably, under this rationale, the instruction could have influenced the jury's determination on the OVI charge, specifically concerning the issue of whether Allsup was operating the truck while under the influence. Notably, this contention is not raised by Allsup on appeal. Nevertheless, when reviewing the jury instruction as a whole, we find this assertion to be merely speculative. The instruction on voluntary intoxication appeared on page two of the seventeen-paged jury instruction. The instruction on the charge of OVI appeared on page twelve and defined what constituted being "under the influence," which differs substantively from "intoxication."

{¶33} Moreover, the OVI charge was followed by this instruction. "If, during the course of trial, the court said or did anything that you consider an indication of the Court's views on the facts, you are instructed to disregard it." (Jury Instructions, pp.14-15). Therefore, we find the correlation between the trial court's instruction on voluntary intoxication and the potential insinuation by the trial court that Allsup was intoxicated at the time of the incident is highly attenuated.

{¶34} Accordingly, when reviewing the contended instruction in the context of the entire jury instructions, we do not find that the trial court's decision to include the instruction on voluntary intoxication constituted an abuse of discretion. Allsup's second assignment of error is overruled.

### *Third Assignment of Error*

{¶35} In his third assignment of error, Allsup argues that the trial court erred when it denied his motion for acquittal. Allsup maintains that the prosecution did not present sufficient evidence to establish his guilt beyond a reasonable doubt on the charge of felonious assault of a peace officer under R.C. 2903.11(A)(2). Specifically, Allsup contends that the prosecution failed to demonstrate that he used the pick-up truck in such a manner to constitute a deadly weapon as defined in R.C. 2923.11(A).

**{¶36}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

**{¶37}** On appeal, Allsup only contends that his conviction for felonious assault on a police officer was not supported by sufficient evidence. Specifically, Allsup challenges the adequacy of the prosecution's evidence with regard to the element of the offense requiring the use of a deadly weapon. Allsup was charged under R.C. 2903.11(A)(2), (D)(1) which provides, in pertinent part:

> **(A)    No person shall knowingly do * * * the following:**
>
> **(2)** *Cause or attempt to cause physical harm to another * * *by* **means of a deadly weapon* * *.**
>
> **(D)(1)(a) Whoever violates this section is guilty of felonious assault. * * * If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of**

**criminal identification and investigation, felonious assault is a felony of the first degree.**

(Emphasis added).

{¶38} One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Physical harm to persons is statutorily defined as "any injury, illness, or other physiological impairment, *regardless of its gravity or duration*." R.C. 2901.01(A)(3) (Emphasis added). We further note that the offense does not require the offender to inflict serious physical harm in order to be found guilty of the offense. In addition, a deadly weapon includes "any instrument, device, or thing capable of inflicting death, *and* designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A) (Emphasis added).

{¶39} It is well established that an automobile may be used as a deadly weapon for the purposes of R.C. 2923.11(A). See *State v. Gibson*, 9th Dist. No. 23881, 2008-Ohio-410, ¶14 citing *Gaydesh v. Gaydesh*, 168 Ohio App.3d 418, 860 N.E.2d 789, 2006-Ohio-4080, ¶16. "In determining whether an automobile is a deadly weapon, a court should not only consider the intent and the mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily harm."

*State v. Upham* (May 12, 1997), 12th Dist. No. CA96-08-157, *2. The determination of whether an automobile is used as a deadly weapon is a question of fact for the trier of fact. *Id.*

**{¶40}** At trial, Officer Deckling testified that he was pursuing Allsup's truck southbound on Route 31 when the pick-up truck came to a stop in the middle of the road, straddling the yellow line. Officer Deckling stopped his cruiser approximately fifteen to twenty feet behind Allsup's truck. Officer Deckling testified that he was concerned about Allsup and Wayne attempting to jump out of the truck and run. The next thing Officer Deckling observed was the reverse lights illuminate on Allsup's truck. At that point, Allsup reversed his truck and rammed it into the front driver's side of Officer Deckling's cruiser. Officer Deckling recalled that the impact of the two vehicles crumpled the hood on the driver's side and disabled the driver's side headlight. Officer Deckling suffered injury when the force of the collision caused the dash of the cruiser to slam into his right shin. Officer Deckling remembered that he immediately reported the ramming of his vehicle by Allsup's truck over the police radio.

**{¶41}** The ramming incident was not captured by the dash camera in Officer Deckling's cruiser because the video card was full, and had not been cleared prior to his shift. However, the testimony of other law enforcement personnel at trial corroborated Officer Deckling's account of the ramming because

they overhead Officer Deckling report the ramming over the police radio. The prosecution submitted photographs of the damage done to Officer Deckling's cruiser and pieces of the front bumper that were picked up off the road where the ramming had occurred. It is clear from the pictures that the majority of the damage to the front of the cruiser occurred where the driver, Officer Deckling, was situated. In total, the damage to the cruiser cost $3,166.16 to repair.

{¶42} Allsup argues that this evidence was insufficient to demonstrate that he used the truck as a deadly weapon. Rather, Allsup maintains on appeal that he merely used his vehicle to disable the police cruiser and not to inflict injury on Officer Deckling. Notably, with regard to this assertion, Allsup testified at trial that he could not recall the events of that night due to his "lapses in memory," and did not provide any testimony to support his contention on appeal. Nevertheless, Allsup contends on appeal that the manner in which he used his vehicle failed to rise to the level of use as a deadly weapon because his truck hit Officer's Deckling's cruiser at a low-rate of speed. Allsup maintains that if he meant to injure Officer Deckling, he would have hit the police cruiser with a greater rate of speed.

{¶43} In making this argument, Allsup misconstrues the statutory definition of what constitutes a deadly weapon. Allsup acknowledges that an automobile is a thing that is capable of inflicting death satisfying the first requirement of R.C.

2923.11(A). However, to satisfy the second requirement of R.C. 2923.11(A) the automobile merely needs to be "used as a *weapon*," not as Allsup appears to contend that it must be used as a *deadly weapon*. (Emphasis added). Moreover, other courts have found that there was sufficient evidence to establish the commission of felonious assault with a deadly weapon under R.C. 2923.11(A)(2) when the defendant used a car to ram the victim's vehicle while the victim was positioned inside. See *State v. Gibson*, 9th Dist No. 23881, 2008-Ohio-410, * 5; *State v. Tortarella,* 11th Dist No. 2002-L-147, 2004-Ohio-1175, ¶ 65; *In re B.B.*, 8th Dist No. 81948, 2003-Ohio-5920, ¶ 17.

{¶44} Accordingly, we conclude that after viewing this evidence, in a light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Allsup knowingly attempted to cause, and did cause, physical harm to Officer Deckling by means of his truck, a thing capable of inflicting death and used, in this instance, as a weapon. Moreover, there has been no dispute that Officer Deckling was a uniformed member of the City of Kenton Police Department on active duty on the morning of April 3, 2009 providing sufficient evidence to support the peace officer element of the charge. Based on the foregoing, we conclude that the prosecution presented sufficient evidence to

establish Allsup committed felonious assault against Officer Deckling in this case.[1]

**{¶45}** Allsup's third assignment of error is, therefore, overruled.

*Fourth Assignment of Error*

**{¶46}** In his fourth assignment of error, Allsup contends that the trial court erred when it denied his request to remove juror Grappy for cause, which required Allsup to use a preemptory challenge to remove Mr. Grappy from the jury pool. Allsup argues that Mr. Grappy should have been removed for cause because he routinely worked with law enforcement as a State of Ohio employee in the fraud department of the Bureau of Worker's Compensation. Mr. Grappy explained that he analyzed computers seized by law enforcement through search warrants or in the general course of criminal investigations related to worker's compensation fraud. Specifically, Mr. Grappy's job consisted of retrieving files from computers involved in the fraud investigations. Allsup maintains that due to the nature of Mr. Grappy's employment, the trial court's failure to excuse Mr. Grappy as a prospective juror constituted reversible error.

**{¶47}** A prospective juror may be challenged for cause if there is a demonstration of bias toward the defendant. Crim.R. 24(C)(9); R.C. 2945.25(B).

---

[1] We note that even though we find that the evidence was sufficient to support the count of felonious assault on a peace officer as charged in the indictment, the question of whether Allsup's guilty verdict on this charge was supported by the manifest weight of the evidence is not before us and, therefore, we make no conclusions as to that inquiry under this assignment of error.

"[T]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. This is so because a trial court is in the best position to assess the potential juror's credibility. Accordingly, the trial court's determination will be affirmed absent a showing that the court's attitude is arbitrary, unreasonable, or unconscionable. *Id*.

{¶48} Initially, we note that there is nothing in R.C. 2945.25 or Crim.R. 24 to suggest that a person, by virtue of his employment with the State of Ohio, is automatically precluded from serving on a jury in a criminal case. Rather, it has been held that "[w]here actual bias is lacking * * * a state employee is not disqualified from serving on a jury in a criminal case." *State v. Pottersnak*, 7th Dist. No. 00-JE-19, 2001-Ohio-3311, *4, quoting *State v. Sims* (1969), 20 Ohio App.2d 329, 332. See, also, *State v. Stockton* (May 5, 1997), 3rd Dist. No. 17-96-15 (finding that, absent a showing of actual bias, the trial court did not err in denying defendant's challenge for cause to a juror who was a county probation officer).

{¶49} The proper test to determine a juror's bias is "whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality * * * ." *State v. Warner* (1990), 55 Ohio St.3d 31, 47

564 N.E.2d 18. Moreover, "[t]he affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside * * *." *Id.* at 47.

{¶50} During voir dire, Mr. Grappy stated that he routinely worked with law enforcement in his capacity as a computer analyst in Worker's Compensation fraud investigations. However, the majority of the law enforcement members who Mr. Grappy worked with were either located in Lima or Columbus. Mr. Grappy also stated that he had not worked with any of the law enforcement personnel involved in Allsup's case. Mr. Grappy affirmed that his employment with the State of Ohio would not affect his ability to be a fair and impartial juror. Defense counsel then ceased to inquire any further about Mr. Grappy's qualifications as a prospective juror on the record. In raising his objection to the trial court's decision not to excuse Mr. Grappy for cause, defense counsel indicated that Mr. Grappy's employment with the State of Ohio presented a conflict.

{¶51} After reviewing the record before us, we believe that Allsup failed to establish that Mr. Grappy had an opinion which raised a presumption of partiality. The simple fact that Mr. Grappy is an employee of the State of Ohio, without more, does not demonstrate that he harbored bias against Allsup and that he could not be a fair and impartial juror in this case. Accordingly, we find that the trial

court did not abuse its discretion when it denied Allsup's request to remove Mr. Grappy for cause.

**{¶52}** Allsup's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶53}** In his fifth assignment of error, Allsup argues that the trial court erred when it imposed upon him the same term of imprisonment that it had imposed upon his brother, Wayne, for similar offenses. Specifically, Allsup contends that the trial court treated him and Wayne as "similar offenders" under R.C. 2929.11(B). Allsup maintains that his sentence should have been less than Wayne's, because Wayne had prior felony convictions and this was only Allsup's first felony conviction and therefore they are not "similar offenders."

**{¶54}** Because Allsup challenges his sentence arguing that the trial court failed to properly apply the sentencing factors under R.C. 2929.11, we review his sentence to ascertain whether the trial court abused its discretion. See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶55}** Section 2929.11(A) of the Revised Code provides that the trial court must be guided by the "overriding purposes of felony sentencing," which are "to

protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). Furthermore, R.C. 2929.11(B) states that a felony sentence "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in [R.C. 2929.11(A)], commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶56} At the outset, we note that "there is no grid under Ohio law under which identical sentences must be imposed for various classifications of offenders." *State v. Dawson*, 8th Dist. No. 86417, 2006-Ohio-1083, ¶ 31. An appellate court must examine the record not to decide whether the trial court "imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice. Although the offense[s] may be similar, distinguishing factors may justify dissimilar treatment." *Id.*

{¶57} After reviewing the record in the instant case, it is apparent that Allsup's contention that he should have received a lesser sentence than Wayne due to their disparate criminal histories lacks merit. While it may be true that Wayne had a more extensive criminal record than Allsup, Allsup played a different role in the commission of the offenses than Wayne. Allsup was the driver of the pick-up

truck and in total control of the situation. The evidence supports that it was Allsup who failed to stop his vehicle when Officer Deckling and other law enforcement personnel signaled and ordered him to so. Allsup was the driver of the pick-up truck that rammed Officer Deckling's cruiser. At any point during the incident, Allsup could have put an end to the high-speed pursuit, but instead chose to continue a course of action which put lives in jeopardy and demonstrated a complete disregard for risk he presented to the safety of others including himself and his brother. Moreover, each of the prison terms imposed by the court was within the statutory sentencing ranges for the offenses.

{¶58} Accordingly, we conclude that Allsup failed to establish that the trial court abused its discretion. Therefore, Allsup's fifth assignment of error is overruled.

{¶59} Having found no error prejudicial to Allsup, the judgment of the Court of Common Pleas of Hardin County is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., and PRESTON, J., concur.**

**/jnc**