[Cite as *State v. Blackburn*, 2022-Ohio-988.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 8-21-25

    v.

JAMES A. BLACKBURN,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 20 12 0295

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: March 28, 2022**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Eric C. Stewart* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, James A. Blackburn ("Blackburn"), appeals from the June 4, 2021 judgment entry of sentencing of the Logan County Court of Common Pleas following a jury trial.

*Facts and Procedural History*

{¶2} On December 8, 2020, Blackburn was indicted in a four-count indictment on Count One, having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; Count Two, felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with a firearm specification; Count Three, improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), a felony of the second degree, with a firearm specification and a specification for forfeiture of a weapon; and Count Four, using weapons while intoxicated in violation of R.C. 2923.15(A), a misdemeanor of the first degree. Blackburn entered a plea of not guilty and the case proceeded to a two-day jury trial on April 19-20, 2021. The jury found Blackburn guilty as charged in the indictment. The following is a summary of the testimony and evidence that was presented at trial.

{¶3} During trial, the testimony revealed Blackburn's charges stemmed from a shooting incident which occurred on November 23, 2020, involving Blackburn and his daughter, Sheila Whatley, and his son-in-law, Jeff Whatley. At the time of

the incident, Blackburn was living in a camper behind the rear of the Whatley's house. One of the conditions for him to live there was not drinking whiskey because he is not able to control himself and there may be violent behavior.

{¶4} Both victims testified for the State. Jeff testified that after he arrived home from work shortly before 10:00 p.m. on November 23, Blackburn called him about 10:02 p.m. on the phone and wanted him to come over to his camper to have a beer with him. When Jeff told Blackburn he sounded drunk on the phone, Blackburn told him he had drank eight or nine beers. Jeff said he would come over after he finished his dinner. Jeff testified that, as he stepped into the camper, he saw Blackburn sitting at the kitchen table with two handguns on the table. Jeff said that when he asked what the guns were for, Blackburn responded, "we're going to have a heart-to-heart talk." (Trial Tr., Vol. I, p. 39). Jeff testified that, at that point, he felt his life was in danger and when he turned to run out the door, Blackburn stood up, said "come back here," and pointed the gun at him. (*Id.* at 41-42, 61-62).

{¶5} Jeff further testified that he heard a gunshot while he was running toward his house and heard another shot. Jeff then woke up Sheila and told her that "her father was shooting at [him]." (*Id.* at 43). He and Sheila were in the dining room when multiple shots were fired into the house. Jeff testified he believed Blackburn was intoxicated.

**{¶6}** Sheila testified that on the night of the incident, she was sleeping when Jeff woke her up to tell her that her dad was shooting at him. Sheila, who heard Blackburn yelling and screaming profanity at Jeff while outside the back kitchen door, called out for him to please stop. Sheila told Jeff he needed to go out the front door while she called the Sheriff. Sheila testified that while she was on the phone with the Sheriff's office, she heard the glass in the kitchen door shatter and she was sure then that Blackburn was shooting. She likewise testified that she heard multiple shots being fired. She testified that she later found an empty bottle of Seagram's 7 in Blackburn's camper.

**{¶7}** Patrol Sergeant John Godwin ("Patrol Sergeant Godwin") of the Logan County Sheriff's Office testified that he and two Sheriff's Deputies were dispatched to the Whatley's residence to respond to a call about Blackburn shooting into that residence. After their arrival, one of the Deputies looked through the window of Blackburn's camper and saw what appeared to be Blackburn reloading a weapon. Blackburn eventually stepped out onto the porch after being ordered to come out of the camper, and as they approached to take him into custody, Blackburn attempted to strike one of the Deputies. According to Patrol Sergeant Godwin, Blackburn had a very strong odor of alcohol on his person, his language was horrible, and he was agitated and verbally abusive to them.

{¶8} Blackburn was then arrested, and because of his intoxicated state, he was not interviewed until the next night. That interview was conducted by Patrol Sergeant Godwin and one of the responding Deputies and was recorded. The recording of the interview was played for the jury.

{¶9} In the interview, Blackburn stated that on the night of the incident, he started drinking Seagram's 7 whiskey around 4:30 p.m. and then at 10:00 or 10:15 p.m., he remembered finding himself outside firing his revolver. He stated he gets "ziggity boo" when drinking whiskey and then explained that means he gets goofy and has blackouts. (Trial Tr., Vol. I, p. 145, 154). Although Blackburn did not remember inviting his son-in-law out to his camper to have a beer with him that night, the call history contained in Blackburn's cellular telephone indicated that he made a call to Jeff at 10:02 p.m.

{¶10} Also during the interview, Blackburn admitted owning two guns, and further admitted to taking his revolver outside and firing it just to see if the bullets would still fire. He thought he fired all six rounds in the revolver.

{¶11} Detective Shawn McIntire of the Logan County Sheriff's Office also testified for the State. The Detective identified multiple photos of inside Blackburn's camper, including one that showed the two handguns lying on the kitchen seat. The Detective also identified four bags containing the spent bullet projectiles that were recovered from the scene: "One inside the cabinet, one on the

floor, one inside the dishwasher, and one in the door handle—doorknob." (Trial Tr., Vol. I, p. 110). The Detective also found over five spent bullet casings from Blackburn's revolver. A Logan County Sheriff's Deputy testified that he test fired the revolver.

**{¶12}** As noted earlier, the jury returned a verdict of guilty on all charges.

**{¶13}** At the subsequent sentencing hearing held on June 3, 2021, the parties agreed that the offenses of felonious assault and improper discharging a firearm at or into a habitation would merge, and the prosecution elected to recommend a sentence on the improper discharge offense. The trial court then sentenced Blackburn to a non-mandatory indefinite prison term with a minimum term of six years and a maximum prison term of nine years on Count Three, improperly discharging a firearm at or into a habitation, with three years for the firearm specification. For having weapons under disability, the trial court sentenced Blackburn to thirty-six months and to one hundred eighty days for using weapons while intoxicated, both to be served concurrently to Count Three.

**{¶14}** Notably, in addition to the foregoing sentence, the trial court also sentenced Blackburn to a concurrent six-year prison term for Count Two, felonious assault, "[i]n the alternative." (June 4, 2021 Judgment Entry/Sentencing Prison at 1-2, Sentencing Tr. at 9). And in relation to this "alternative" sentence, the trial court also sentenced Blackburn to three years for the firearm specification as to

Case No. 8-21-25

Count Two, felonious assault, to be served consecutively to the sentences imposed on both Count Three and its firearm specification, for an aggregate prison term of twelve to fifteen years.

{¶15} Blackburn now appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS BECAUSE COUNSEL FAILED TO PURSUE JURY INSTRUCTIONS ON VOLUNTARY INTOXICATION AS A DEFENSE TO APPELLANT'S FELONY CHARGES.**

**ASSIGNMENT OF ERROR NO. 2**

**APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS BECAUSE COUNSEL FAILED TO REQUEST JURY INSTRUCTIONS DEFINING VOLITIONAL ACTS.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT IMPROPERLY MERGED FELONIOUS ASSAULT UNDER R.C. 2941.25 BY IMPOSING A CONCURRENT SENTENCE.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ERRED BY IMPOSING A PRISON TERM FOR THE FIREARM SPECIFICATION THAT WAS ATTACHED TO THE FELONIOUS ASSAULT COUNT THAT WAS MERGED PURSUANT TO R.C. 2941.25.**

-7-

*First and Second Assignments of Error*

{¶16} Blackburn's first and second assignments of error will be addressed together as both claim that Blackburn was deprived of his constitutional rights to effective assistance of counsel.

*Legal Standard*

{¶17} " 'Under Ohio law, "a properly licensed attorney is presumed to carry out his duties in a competent manner." ' " *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 57, quoting [*State v.*] *Beaver*, [3d Dist. Marion No. 9-17-37, 2018-Ohio-2438], ¶ 26, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9 (July 22, 1993). "For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel." *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 17, citing *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 42.

{¶18} "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the issue of ineffective assistance of counsel is a two-pronged

analysis, the appellate court does not need to consider the facts of the case under both prongs if the appellant makes an insufficient showing on one. *Crawford* at ¶ 18, citing *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, [3d Dist. Seneca No. 13-15-42], 2016-Ohio-3499, ¶ 20.

**{¶19}** To establish deficient performance, Blackburn must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Trial "counsel need not raise meritless issues or even all arguably meritorious issues for that matter." *State v. Jones*, 91 Ohio St.3d 335, 354, 2001-Ohio-57.

*Analysis*

**{¶20}** Blackburn argues in his first assignment of error that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's jury instruction on R.C. 2901.21(E) and to request an instruction on voluntary intoxication as a defense to his second-degree felony charges.

**{¶21}** We begin by noting that Crim.R. 30(A) provides that, on appeal, an appellant may not assign as error the giving or failure to give any jury instructions unless the appellant objected before the jury retired to consider its verdict. However, Crim.R. 52(B) provides that " 'a court may take notice of plain errors that affect substantial rights[.]' " *State v. Wickard*, 3d Dist. Hancock No. 5-05-30, 2006-Ohio-6088, ¶ 37, quoting *Durkin*, 66 Ohio St.2d 158, 161 (1981). "Furthermore, an

erroneously omitted jury instruction ' "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." ' " *Wickard*, quoting *State v. Cooperrider*, 4 Ohio St.3d 226, 227 (1983), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus.

R.C. 2901.21(E) states that

**Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged.**

**{¶22}** At Blackburn's trial, the trial court instructed the jury as follows:

**Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. Voluntary intoxication does not relieve a person of the duty to act if failure to act constitutes a criminal offense. Intoxication includes intoxication resulting from ingestion of alcohol. Voluntary intoxication may be admissible to show whether or not a person was physically capable of performing the act with which the person is charged.**

(Trial Tr., Vol. II, p. 216).

**{¶23}** The instruction the trial court gave was an accurate statement of the law, tracking the statutory language of R.C. 2901.21(E). *Accord* Intoxication Comment to Ohio Jury Instructions, CR 421.07. This Court has before approved of a trial court's instruction on voluntary intoxication pursuant to the statute, finding

-10-

that it "was given by the trial court to correctly inform the jury that they were precluded from considering whether [Appellant] was intoxicated when determining if he had formed the requisite intent and acted purposely and knowingly when the offenses were committed." *State v. Allsup*, 3d Dist. Hardin No. 6-10-09, 2011-Ohio-404, ¶ 30. *See also State v. Gribben*, 3d Dist. Seneca No. 13-19-50, 2020-Ohio-3083, ¶ 30 (stating "R.C. 2901.21(E) prevents voluntary intoxication from being taken into consideration when considering a culpable mental state").

{¶24} Notwithstanding the plain statutory language regarding voluntary intoxication, Blackburn relies on the Fourth District Court of Appeals' case, *State v. Goad*, 4th Dist. Washington No. 08CA25, 2009-Ohio-580, to support his argument that trial counsel should have pursued a voluntary-intoxication instruction to negate the culpable mental state for the charged felony offenses. It has previously been determined that the *Goad* decision relied on cases decided before the 2000 amendment to R.C. 2901.21 (now subsection (E)). *State v. Doll*, 4th Dist. Scioto No. 16CA3731, 2017-Ohio-2894, ¶ 17-18. Further, that same Court subsequently stated in *Doll* that since that amendment courts have been nearly unanimous in their view that the defense of voluntary intoxication no longer exists in Ohio. *Id.* at ¶ 16-17, citing *see, e.g., State v. Koballa*, 8th Dist. Cuyahoga No. 100664, 2014-Ohio-3592, ¶ 24, and cases cited there (" 'Pursuant to the amended statute, a lack of capacity to form an intent to commit a crime due to self-induced intoxication is no

longer a defense to a crime where a mental state is an element of the crime' "); *State v. Hiler*, 2d Dist. Montgomery No. 25609, 2014-Ohio-137, ¶ 41 (" 'voluntary intoxication is not a defense to any crime in Ohio' "); *State v. Hill*, 10th Dist. Franklin No. 09AP-398, 2010-Ohio-1687, ¶ 27, quoting *State v. Melhado,* 10th Dist. Franklin No. 02AP-458, 2003-Ohio-4763, ¶ 48 (" 'This court has held that, since the General Assembly amended R.C. 2901.21 in 2000, "voluntary intoxication may no longer be taken into account in determining the existence of a mental state that is an element of a criminal offense" ' "); Katz, Martin, and Giannelli, *Baldwin's Ohio Practice Criminal Law*, at Section 91:5 ("prior law on voluntary intoxication as a limited defense 'is now superseded by the new statute' "). Thus, the Fourth District overruled *Goad* to the extent that it previously held otherwise. *Id.* at ¶ 1, 18.

{¶25} Given the foregoing, Blackburn does not identify relevant law trial counsel should have relied upon, and thus fails to meet his burden to demonstrate that counsel was deficient. *See id.* at ¶ 24 (finding trial counsel cannot be deficient for failing to raise a meritless objection to trial court's jury instruction on voluntary intoxication).

{¶26} In the second assignment of error, Blackburn claims that trial counsel performed ineffectively by failing to request additional jury instructions on volitional acts. Specifically, he contends that the jury should have been instructed

on the element of "voluntary act" as a requirement for the offenses (R.C. 2901.21(A)(1)) and on the explanation of what constitutes an involuntary act (R.C. 2901.21(F)(2)).

{¶27} R.C. 2901.21(A)(1) requires a "voluntary act" as an element of every crime. *See State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, ¶ 31. However, "[v]oluntariness is not an essential element of the offense such that it must be charged in the indictment or addressed in the trial court's jury instructions, even if the need for the act to be voluntarily committed is stated in the statutory scheme." *Id.* at ¶ 33. Blackburn's argument of ineffective assistance as it relates to R.C. 2901.21(A)(1) is without merit.

{¶28} Blackburn also directs our attention to R.C. 2901.21(F)(2), which defines a voluntary act in the negative: "Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts," R.C. 2901.21(F)(2). On appeal, Blackburn claims there was ample evidence that he was "blackout drunk" on whiskey on the night in question to have the jury instructed on involuntary acts. (Appellant's Brief at 14).

{¶29} The standard jury instruction for blackout states: "Where a person commits an act while unconscious as in a (coma) (blackout) (convulsion) due to (heart failure) (disease) (sleep) (injury), such act is not a criminal offense even

though it would be a crime if such act were the product of a person's (will) (volition)." Ohio Jury Instructions, CR Section 417.07. We have previously determined, regarding a jury instruction for blackout, that the trial court correctly held that the instruction was not warranted because there was no evidence that the defendant was unconscious; rather the defendant testified that he could not remember anything. *State v. Gutierrez*, 3d Dist. Hancock No. 5-95-10, *4 (Sept. 21, 1995). Additionally, this Court has noted the following regarding the issue of blackout:

> **The blackout defense is not available in every instance where the defendant cannot remember what occurred. Blackout or unconsciousness is a defense only where such condition is involuntary and such involuntary condition prevented the defendant from taking action that he or she is legally required to take under the circumstances or, possibly, in situations where the unconsciousness or blackout prevents a defendant from forming a specific intent. In the latter circumstance, the evidence must establish that the defendant was unconscious and acted involuntarily. A defendant's mere failure to remember what happened does not constitute such evidence. (Citation omitted.)**

*State v. Allsup*, 3d Dist. Hardin No. 6-10-09, 2011-Ohio-404, at ¶ 22.

{¶30} During the recorded interview at the Sheriff's Office in this case, which was played for the jury, Blackburn was asked whether he remembered inviting his son-in-law out to his camper to have a beer with him the night of the incident and his answer was: "No. * * * I get to drinking [whiskey] like it's beer and get one of them *** blackouts." (Trial Tr., Vol. I, p. 144-145). Then, when

asked how many rounds did he fire, he answered "I thought I fired all six of them." (*Id.* at 146). "I don't remember if I fired them in the air or into the ground, but I probably fired five and when I turned around to go back in the house, I turned around this way and I staggered and it shot the door." (*Id.*) He was further asked about whether at least three rounds went into the house, and Blackburn answered, "It did * * * I know the window broke. I broke the window. But I was drunk, staggering." (*Id.* at 147). There was no evidence that Blackburn was unconscious or in a complete blackout. Thus, on this record, Blackburn has not demonstrated, and the record does not show, that the failure to request the involuntary acts instruction constitutes plain error or ineffective assistance.

{¶31} Accordingly, Blackburn's first and second assignments of error are overruled.

*Third Assignment of Error*

{¶32} In his assignment of error, Blackburn argues that the trial court erred by originally purporting to merge the felonious assault conviction under R.C. 2941.25, and then notwithstanding that merger, proceeding to impose an "alternative" concurrent prison sentence as to that conviction.

*Analysis*

{¶33} R.C. 2941.25 prohibits the imposition of multiple sentences for allied offenses of similar import. *State ex rel. Romine v. McIntosh*, 162 Ohio St.3d 501,

2020-Ohio-6826, ¶ 13, citing *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, ¶ 17. Thus, "the imposition of concurrent sentences is not the equivalent of merging allied offenses." *State v. Morrissey*, 3d Dist. Hardin No. 6-21-02, 2021-Ohio-4471, ¶ 34. Rather, a trial court must merge allied offenses by imposing a single sentence that is appropriate for the offense chosen for sentencing. *Id.*

**{¶34}** Initially, we note the State attempts in its brief to make an argument for the first time in this Court that we could affirm the trial court's concurrent sentences based on the ground its failure to merge the offenses would not constitute error because they are not allied offenses. However, we need not address this issue, because the State's position on appeal is contrary to its position at the sentencing where it agreed to the merger of the offenses. Pursuant to the "invited error" doctrine, a party may not " 'take advantage of an error which [that party] invited or induced.' " *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus. *See also State v. Carter*, 5th Dist. Muskingum No. CT2018-0072, 2019-Ohio-3485, ¶ 15 (stating "to allow argument that the trial court erred by not disallowing the mergers as approved by the parties would violate the invited error doctrine"). For these reasons, the only issue now before the Court is whether the trial court committed error in sentencing Blackburn on the allied offenses.

**{¶35}** Here, the transcript demonstrates that the State told the trial court at sentencing it believed that the two offenses of improperly discharging a firearm into a habitation and felonious assault would merge for sentencing and it elected to recommend a sentence of eight years in prison for the improperly discharging offense. Defense counsel also agreed that these offenses were allied offenses subject to merger.

**{¶36}** Thereafter, on its own initiative, the trial court explicitly accepted the parties' merger agreement, but announced additionally and "in the alternative," that if the merger was incorrect, the court would also sentence Blackburn on the felonious assault to run concurrently with the improperly discharging a firearm into a habitation and all the other offenses in this case. (Sentencing Tr. at 9-10). The judgment entry of sentencing reflected this merger by stating:

> **The State and Defendant, by and through counsel, agreed that the substance offense on Count Two, felonious assault, felony of the second degree, and the offense in Count Three, improperly discharging a firearm at or into a habitation, felony of the second degree, are allied offenses and subject to merger for purposes of sentencing. Based on the agreement of the parties, the Court finds Count Two and Count Three are allied offenses and merges the substantive offenses * * *. In the alternative, the Court imposed concurrent sentences on the substantive offenses in Count Two and Count Three[.]**

(June 4, 2021 Judgment Entry/Sentencing Prison at 1-2).

**{¶37}** This is contrary to the statutory and case law pertaining to the merger of allied offenses under which guilt may be determined of both offenses, but the

court may only sentence on one, as per the election of the State. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2; R.C. 2941.25(A). As a result, we agree with Blackburn that the trial court incorrectly sentenced him for two offenses that it had determined were allied instead of sentencing on only one offense. Thus, the trial court's imposition of concurrent sentences on the merged counts was plain error, affecting Blackburn's right to be sentenced on only one of the merged offenses. Accordingly, and to this extent only, Blackburn's third assignment of error is sustained.

*Fourth Assignment of Error*

**{¶38}** In this assignment of error, Blackburn asserts that the trial court also erred by imposing a prison term for the firearm specification that was attached to the allied and merged offense of felonious assault. Both the firearm specification attached to the felonious assault and the firearm specification attached to the improperly discharging a firearm into a habitation were charged as violations of R.C. 2941.145(A).

**{¶39}** R.C. 2941.145(A) states that

> **[i]mposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.**

{¶40} R.C. 2929.14(B)(1)(a)(ii) provides that "if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in * * * 2941.145 of the Revised Code, the court shall impose on the offender * * * [a] prison term of three years."

{¶41} "Generally, a trial court may not impose more than one prison term for multiple firearm specifications 'for felonies committed as part of the same act or transaction.' " *State v. Gervin*, 3d Dist. Marion No. 9-15-52, 2016-Ohio-8399, ¶ 198, citing R.C. 2929.14(B)(1)(b). However, R.C. 2929.14(B)(1)(g) provides the following exception to this rule:

> **If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery,** *felonious assault***, or rape, and if the offender is convicted of or pleads guilty to a [firearm] specification * * * in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications. (Emphasis added.)**

{¶42} We note that the Eighth and Ninth Appellate Districts have addressed the issue before us and concluded that when an underlying offense is merged as an allied offense, it is impermissible to sentence an offender for a firearm specification that was attached to the merged offense. *See State v. Doyle*, 8th Dist. Cuyahoga No.

Case No. 8-21-25

107001, 2019-Ohio-979; *State v. Roper*, 9th Dist. Summit Nos. 26631 and 26632, 2013-Ohio-2176.

**{¶43}** We note the Fifth Appellate District has made a contrary determination on this issue, *see State v. Bollar*, 5th Dist. Stark No. 2020 CA 00077, 2021-Ohio-1578, and has certified a conflict with these holdings, which is currently pending in the Ohio Supreme Court. *See State v. Bollar*, 164 Ohio St.3d 1409, 2021-Ohio-2795. *Bollar* determined that the firearm specifications accompanying the merged offenses were not subject to merger pursuant to R.C. 2929.14(B). As the court stated in *Bollar*:

> **The legislature has specifically authorized cumulative punishment by creating the exception to the general rule that the trial court is forbidden from imposing sentences on multiple firearm specifications for "felonies committed as part of the same act or transaction" contained within R.C. 2929.14(B)(1)(b), and pursuant to that exception, with its command set forth in R.C. 2929.14(B)(1)(g) that the trial court "*shall impose* on the offender the prison term specified under division (B)(1)(a) of this section *for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty….*" (Emphasis sic).**
>
> **In the case at bar, Bollar pled guilty to multiple felonies, to wit: involuntary manslaughter, felonious assault and having weapons while under a disability. The determination of guilt based upon his guilty pleas to each offense survived the trial court[']s merger of the felonious assault and involuntary manslaughter offenses. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182. Therefore, the trial court was required by R.C. 2929.14(B)(1)(g) to sentence Bollar to the two most serious firearm specifications that accompanied his felony guilty pleas. R.C. 2929.14(B)(1)(g).**

**We therefore find that the trial court did not err in concluding that the firearm specifications accompanying the involuntary manslaughter and felonious assault were not subject to merger pursuant to R.C. 2929.14(B).**

**The trial court did not err in ordering two of the three firearm specifications to run consecutively pursuant to R.C. 2929.14(B)(1)(g).**

*Bollar,* 5th Dist. Stark No. 2020 CA 00077, 2021-Ohio-1578, at ¶ 27-30.

**{¶44}** We have carefully considered the reasoning expressed by the above courts on this issue and find the reasoning of the majority decision in the Fifth District case, based upon the express language of R.C. 2929.14(B)(1)(g), to be more persuasive. *Bollar*.

**{¶45}** Accordingly, and notwithstanding the error of the trial court in purporting to sentence upon the merged offense of felonious assault, we find that the trial court did not err in concluding that the firearm specifications accompanying the improperly discharging a firearm into a habitation and felonious assault were not subject to merger pursuant to R.C. 2929.14(B). And accordingly, the trial court did not err in ordering the two firearm specifications to run consecutively pursuant to R.C. 2929.14(B)(1)(g).

*Conclusion*

**{¶46}** Having sustained Blackburn's third assignment of error, we remand this matter for a limited resentencing of the merged counts because the trial court

improperly imposed a concurrent sentence on the felonious assault count.  However, for the reasons as noted above, the trial court's sentence upon the firearm specifications do not merge.  Thus, the judgment of the Logan County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded to the trial court.

***Judgment Affirmed in Part,***
***Reversed in Part and***
***Cause Remanded***

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**