GAYDASH, Appellee,

v.

GAYDASH, Appellant.

[Cite as *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23024.

Decided Aug. 9, 2006.

---

10. Id.

11. *Pinney*, 71 Ohio St. at 183–184, 72 N.E. 884.

John A. Daily and Sidney N. Freeman, for appellant.

Arthur Axner, for appellee.

WHITMORE, Presiding Judge.

{¶ 1} Defendant-appellant, Joel Gaydash, has appealed from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which adopted a magistrate's decision imposing a final, civil protective order. This court affirms.

I

{¶ 2} The present action stems from a petition for domestic violence/civil protection order filed on May 16, 2005 by plaintiff-appellee, Coleen Gaydash. In her petition, appellee alleged that appellant, Joel Gaydash, ran her and a friend off of the road with his vehicle and verbally accosted them. In response to the petition, the domestic relations court issued an ex parte interim protection order against appellant.

{¶ 3} On May 31, 2005, a hearing was conducted before the magistrate. Appellee appeared pro se. On June 3, 2005, the magistrate issued a civil protection order, protecting appellee from appellant, effective through May 16, 2010.

{¶ 4} On June 13, 2005, appellant filed objections to the magistrate's decision. On November 21, 2005, the trial court filed a judgment entry that overruled appellant's objections and adopted the civil protection order as an order of the court.

{¶ 5} Appellant has timely appealed, asserting two assignments of error, which have been consolidated to facilitate our review.

II

Assignment of Error No. One

It was error to conclude that, taking the testimony of Mrs. Gaydash's witnesses as true, there was a threat of violence against Mrs. Gaydash and the parties' child.

### Assignment of Error No. Two

The factual assertions of Mrs. Gaydash defy logic, and the conclusions based on them are against the manifest weight of credible evidence.

{¶ 6} In his assignments of error, appellant has essentially argued that the trial court erred when it issued the civil protection order because the evidence presented did not support the issuance. Specifically, appellant has argued that the evidence presented did not establish that he committed or threatened to commit violence against appellee. Further, appellant has specifically argued that the evidence presented does not support appellee's allegations relating to the altercation. We disagree.

{¶ 7} In order to grant a civil protection order, a trial court "must find by a preponderance of the evidence that the petitioner is in danger of domestic violence." *Williams v. Workman*, 9th Dist. No. 22626, 2005-Ohio-5388, at ¶ 7, citing *Rhodes v. Gunter*, 9th Dist. Nos. 02CA008156 and 02CA008157, 2003-Ohio-2342, 2003 WL 21040724, at ¶ 4. In the present case, the trial court adopted the magistrate's finding that an act of domestic violence had occurred.

{¶ 8} Domestic violence is defined as:

[T]he occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *;

(c) Committing any act with respect to a child that would result in the child being an abused child * * *.

R.C. 3113.31(A)(1). Further, R.C. 3113.31(A)(3)(a)(i) includes spouses within the definition of "family member."

{¶ 9} This court has held that an appellate court reviews the granting of a civil protection order under the competent, credible evidence standard. *Williams* at ¶ 9. Accordingly, a trial court's judgment will not be reversed if it is supported by some competent, credible evidence going to all the essential elements of the case. *Rhodes* at ¶ 5. Therefore, this court must determine whether competent, credible evidence existed to find that an act of domestic violence occurred against appellee.

{¶ 10} The trial court found that, based on appellee's testimony and that of her witness, Sharon Crissman, appellant had operated his vehicle with the intent to threaten both women or do physical harm to them. The court further found that appellant had used his vehicle in an attempt to run the women's car off the road

and had made threatening statements to both women. The court ultimately found it reasonable that appellee would be in fear of imminent physical harm.

{¶ 11} Appellee testified that appellant pursued them at a high rate of speed in his vehicle, passed them, executed a "donut" in the intersection, and drove directly at them at a high rate of speed and ran them off the road. According to appellee, appellant pulled up beside the women's vehicle and began yelling obscenities at Crissman. Appellee further testified that appellant called Crissman's cell phone and threatened to "blow her away." Appellee also testified that appellant had abused her in the past. She testified that appellant told her she would be "the ugliest girl that ever walked" if she divorced him. She testified that she was in fear of imminent, serious physical harm from appellant, both at present and at the time of the incident.

{¶ 12} Crissman corroborated appellee's testimony regarding the altercation. She further testified that both women felt that their lives were in danger.

{¶ 13} Appellant testified on his own behalf. According to his testimony, Crissman's car blocked him in and prevented him from leaving. Appellant testified that appellee leaned out of the window of her vehicle, screamed at him, and got out of the car. Appellant testified that he eventually was able to drive around them. Appellant testified that he never drove his vehicle on Caston Road, in fact, never took his vehicle out of the driveway. Appellant testified that appellee and Crissman had been harassing him since appellee filed for divorce. Appellant testified that he did not threaten appellee. Appellant further testified that he could not execute a "donut" in a Chevrolet Suburban, which was the vehicle he was driving at the time.

{¶ 14} Appellant's primary argument on appeal is that he did not directly threaten or injure appellee. According to appellant, it is therefore impossible for appellee to have been in fear of imminent serious physical harm. Appellant has relied on Crissman's testimony that appellant pulled up alongside them and "he looked straight at me. He did not look at Appellee. He does not make any accusations towards her, but he said a very bad profanity to me, and scared me." This argument is inapposite.

{¶ 15} This court concludes that, assuming appellee and Crissman's versions of events to be true, being involved in a chase in which a Chevy Suburban drives straight at another vehicle in a proverbial game of "chicken" and forces the other vehicle off the road would place all occupants of the vehicle in fear of imminent, serious physical harm, not just the driver. Further, the acts of an enraged man with a history of violence towards one woman in the vehicle could reasonably affect the feeling of safety of that woman, even if the anger is directed at somebody else in the vehicle.

{¶ 16} Domestic violence requires fear inspired by the threat of force. R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This court has held that when used a certain way, a vehicle is an instrumentality of violence. See *State v. Millender*, 9th Dist. No. 21349, 2003-Ohio-4384, 2003 WL 21976084, at ¶ 15 (holding that a vehicle can be considered a deadly weapon); *State v. Jaynes*, 9th Dist. No. 20937, 2002-Ohio-4527, 2002 WL 2009680, at ¶ 12 (holding that an automobile is a deadly weapon when a driver attempts to run over someone); *State v. Davidson* (June 20, 1990), 9th Dist. No. 89CA004641, at 4, 1990 WL 83966 (holding that an automobile may become a deadly weapon for purposes of R.C. 2903.11(A)(2) depending on the manner in which it is used). This court concludes that the act of driving a large sports utility vehicle directly at another vehicle constitutes a threat of force in that such conduct is a threat of violence against the occupants of the other vehicle. The fear that this particular threat of violence incites is domestic violence.

{¶ 17} Appellant has also argued that pursuant to the mutual restraining order, appellee was not supposed to be on the property. This argument fails for three reasons. First, the mutual restraining order in effect at the time of the altercation did not prohibit appellee from being present at the triplex. The order, filed November 17, 2004, simply dictated that neither party shall "threaten, abuse, annoy or interfere with the other party or the parties' children." Second, the court's temporary order establishing support and allocating residences did not preclude appellee's presence at appellant's residence. Third, the trial court found that appellee's presence was not adequate justification for the actions appellant took. Further, there is no evidence in the record to substantiate appellant's claims that appellee was there to harass him.

{¶ 18} Appellant has also argued that the civil protection order has deprived him of his constitutional right to bear arms under the Second Amendment to the U.S. Constitution. We disagree.

{¶ 19} The purpose of the domestic civil protection statutes is to "protect the family or household member from domestic violence." See R.C. 3113.31(D)(1). Based on Crissman's testimony that appellant threatened to "blow her away," we find that the trial court's order with respect to firearms/deadly weapons was supported by the evidence. See *Mann v. Sumser*, 5th Dist. No.2001CA00350, 2002-Ohio-5103, 2002 WL 31151164, at ¶ 34 (holding that threats to shoot a woman and her family supported a three-year protective order with a firearm prohibition). Though that particular threat was directed as Crissman and not appellee, it is reasonable to infer a danger to appellee from a firearm. Additionally, we decline to address the constitutionality issue, because appellant has failed to develop his argument beyond the mere assertion that the

protection order infringed upon his right to bear arms and has failed to cite any relevant authority in support of his contention. See App.R. 16(A)(7).

{¶ 20} In issuing the protection order, the trial court determined that Crissman was a very competent witness whose testimony corroborated that of appellee. We would be remiss to second guess that determination of credibility based on a cold record. It is well known that "[a] finder of fact is at liberty to believe all, part, or none of the testimony of any witness who appears before it." *Wilburn v. Wilburn*, 9th Dist. No. 05CA008740, 2006-Ohio-2553, 2006 WL 1409784, at ¶ 15, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096; *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548. It is clear that in this case, the trier of fact believed appellee and Crissman's testimony over that of appellant.

{¶ 21} Therefore, deferring to the factfinder's conclusions regarding credibility, this court concludes that some competent, credible evidence exists that appellant perpetrated domestic violence on appellee and that appellee established that a danger of domestic violence remained. We find appellee's fears of imminent, serious physical harm are reasonable given the couple's contentious history and the events of May 15, 2005. After a careful review of the record, we conclude that the granting of a civil protection order was appropriate.

{¶ 22} Appellant's two assignments of error lack merit.

### III

{¶ 23} Based on the foregoing, appellant's first and second assignments of error are overruled. The judgment of the Summit Domestic Relations Court is affirmed.

Judgment affirmed.

MOORE and BOYLE, JJ., concur.