[Cite as *Elkins v. Reed*, 2014-Ohio-1217.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


KEITH J. ELKINS : JUDGES:
:
: Hon. William B. Hoffman, P.J.
Petitioner-Appellee : Hon. Patricia A. Delaney, J.
: Hon. Craig R. Baldwin, J.
-vs- :
: Case No. 2013CA0091
DONNA J. REED :
:
:
Respondent-Appellant :
: O P I N I O N


CHARACTER OF PROCEEDING: Appeal from the Stark County Court of
Common Pleas, Case Nos. 2012-MI-
00319 and 2012-MI-00320



JUDGMENT: AFFIRMED



DATE OF JUDGMENT ENTRY: March 24, 2014



APPEARANCES:

For Petitioner-Appellee: For Respondent-Appellants:

MATTHEW PETIT KRISTINE BEARD
116 Cleveland Ave. NW – Ste. 808 4450 Belden Village NW, Ste. 703
Canton, OH 44702 Canton, OH 44718

*Delaney, J.*

{¶1}   Appellants George M. and Donna J. Reed appeal from the judgment entries of January 31, 2013 and April 30, 2013 of the Stark County Court of Common Pleas.  Appellee is Keith J. Elkins.

{¶2}   These appeals arise from one civil protection order hearing consolidated before the Stark County Court of Common Pleas; these appeals share the same facts and case histories, and raise identical assignments of error. We therefore issue one opinion but under two case numbers because the appeals have not been consolidated.

### FACTS AND PROCEDURAL HISTORY

{¶3}   This case arose from an escalating neighbor dispute between George and Donna Reed ("George" and "Donna") and Keith and Yvonne Elkins ("Keith" and "Yvonne").

{¶4}   Sometime in late 2010 or early 2011, Keith and Yvonne bought approximately 11 acres in East Sparta, Stark County, Ohio, located at 8569 Briggle Avenue.  The acreage consists of several outbuildings and a driveway but no house. The Elkins' primary residence is elsewhere.

{¶5}   George and Donna have lived next door to the Elkins property for over 22 years; their home also fronts on Briggle Avenue; the Reeds also have substantial acreage and their primary residence is located on the property.

{¶6}   Donna testified previous owners of the Elkins acreage were rarely at the property and she never had a problem with them.  Problems began with the Elkins, however, when they began to improve the property in preparation for eventually building their dream home.  Keith and Yvonne came to the property regularly to mow and clear

it. One weekend, the Elkins noticed large blue tarps had been strung up between the properties.

*Firing of Shotguns*

{¶7} One day when Keith was mowing, George came out onto his own property with a shotgun and started shooting, across the property line from Keith. Keith moved to a different area to mow and George moved as well to continue shooting behind him. George was approximately 25 feet away with the shotgun.

{¶8} Donna Reed has also fired a shotgun in an apparent effort to intimidate or harass the Elkins. The parties mutually videotaped each other with cell phone cameras, handheld cameras, and cameras mounted on trees on their respective properties. When the Elkins were installing their cameras, Donna initially walked along the property line, following them as they installed four cameras, then left and came back with a shotgun. She began firing the shotgun directly above them into a tree and they could hear debris falling. Debris struck Yvonne, who said she was calling the sheriff because she'd been shot. Donna responded "Fuck you."

{¶9} George Reed testified he had an interest in shooting since 1995 but became interested in "shooting trap" in 2009. Toward that end, he and Donna shoot 4 to 5 days a week from several different stations set up throughout their property. He stated he has never shot at or in the direction of the Elkins; he shoots from the stations for the benefit of different wooded backgrounds or ground shots. Upon cross examination, George stated he shoots shotgun shells; in other words, he does not shoot at clay pigeons, skeet, or a target because he hasn't gotten to that point yet. He and Donna are "practicing to know what our shot patterns are at different distances."

*Mutual Nuisance*

{¶10} The Elkins have called the Stark County Sheriff's Office several times and the Reeds have called at least once.  One sergeant and four deputies testified at the CSPO hearing about various calls, usually in reference to shots fired.  No criminal charges have been filed and deputies have advised the parties to keep the video cameras posted.

{¶11} Keith set up an "air cannon" or "bird cannon" on his property, purportedly to "make noise."  The cannon shoots air but makes a loud noise at regular timed intervals.  On or around October 25, 2012, Keith observed George on Keith's property, 85-90 feet over the property line, with his hands on the tank of the air cannon.  Keith told him he was trespassing and to get off the property.

{¶12} The exhibits entered by Keith at the CSPO hearing included photographs of signs posted by the Reeds on their own property within sight of the Elkins property, on trees, on tarps, and on lean-tos on the Reed property.  Exhibit A depicts a sign stating "Screw you."  Exhibit B depicts a sign stating, "July 1, 2012, Lies, Taunts, Threats, Stalkings, Call 3304303800."  Exhibit C depicts a sign stating, "COWARDS call the cops because they are children."  Exhibit D depicts a sign stating "July 1, 2012 4:40 p.m. wht/blue tractor lies, insults, threats, taunts, stalkings, good neighbor?"

{¶13} Both Reeds freely admitted to creating the signs and posting them within sight of the Elkins property, to be read by the Elkins.  Donna explained 3304303800 is the telephone number of the Stark County Sheriff referred to in Exhibit B, and Exhibit D refers to an incident in which Keith left his gate open for a man on a blue and white

tractor to enter the property while he was not present. Donna stated other neighbors have also been the subject of signs.

*Donna's Reaction to "Frustration"*

{¶14} Donna admits she has screamed repeatedly at Keith and Yvonne, "out of frustration," including profanities. Her counsel asked her to explain her conduct and she said frustration built for 15 months, once the Elkins started improving their property, because suddenly she believed they were "watching" the Reeds, peering around the tarps the Reeds put up for privacy. Donna admitted she was upset the day she shot into a tree. She went out to practice with her gun and then Keith "engaged" George by stating "You think you're a badass with that gun, don't you?" so Donna fired off a few rounds and asked them if they had anything to say now.

{¶15} The Elkins testified they no longer plan to build on the property and are trying to sell it. Their realtor testified that as prospective buyers get out of their cars to view the property, the shooting starts next door. No offers have been made. Yvonne now refuses to return to the property; she is afraid because at one point she was hit by buckshot or debris. She testified she's tired of the foul language and will not allow her adult children to visit the property. Every time she is at the property, the shooting is continuous.

{¶16} On December 7, 2012, Keith filed two separate petitions against George[1] and Donna[2] seeking Civil Stalking Protection Orders (CSPOs) and the court issued ex parte CSPOs that day. On December 10, 2012, the trial court issued supplemental orders in both cases requiring the removal of weapons from the Reeds' home.

---

[1] Stark County Court of Common Pleas Case No. 2012 MI 00319.
[2] Stark County Court of Common Pleas Case No. 2012 MI 00320.

{¶17} On December 17, 2012, Donna filed a petition for a CSPO against Keith.[3]

{¶18} A full hearing was held before the magistrate on December 21, 2012, January 4, 2013, and January 14, 2013.  Prior to the hearing, the parties agreed to consolidate the two Elkins petitions into one hearing; Donna Reed's evidence against Keith would also be heard separately but at the same time for the convenience of the witnesses, many of whom were Stark County Sheriff's Department personnel.

{¶19} On January 15, 2013, the magistrate issued CSPOs against George and Donna Reed on behalf of Keith Elkins, with Yvonne Elkins listed as a protected person in the order.[4]  The CSPOs are on the standard Ohio Form 10.03-F pursuant to R.C. 2903.214 and the magistrate incorporated an additional separate page of findings of fact.  The terms of the CSPO included, e.g., that the Reeds "shall not possess, use, carry, or obtain any deadly weapon" and the terms of the Order shall be effective until 12/7/2017, or five years after date of issuance of the order.

{¶20} On January 25, 2013, the Reeds filed objections to the magistrate's decision.  On March 13, 2013, the Reeds filed a "Motion to Dismiss," asking the trial court to overrule the magistrate's decision and dismiss the CSPOs, or in the alternative set the matter for a new hearing, because in preparing the objections the parties discovered Exhibit G, the DVD of portions of videotape prepared by the Elkins and played throughout the hearing, was now blank or otherwise unable to be viewed.  The trial court denied the motion to dismiss and ordered the parties to make arrangements with the court's technical personnel to view the DVDs.  On April 15, 2013, the Reeds

---

[3] Stark County Court of Common Pleas Case No. 2012 MI 00329.
[4] The magistrate denied Donna's petition for CSPO against Keith.

filed a Motion for Reconsideration, stating the technical personnel advised Exhibit G was blank.

{¶21} On April 18, 2013, the trial court issued the following Judgment Entry:

> The motion for consideration (*sic*) is denied.  The Court will rule on this matter as previously indicated on or after April 26, 2013.  The Court would note that copies of any DVDs were provided to all counsel of record over and above the court copy.  Further the court would note that Magistrate Hemphill indicated in his findings that his findings were based on other matters beyond the recordings.  The Court would note that a copy of the DVD would also be available either counsel that handled the initial trial in the within matter (*sic*).  The Court will rule on this matter and any briefs or other related matters shall be provided to the Court on or before April 26, 2013.  The motion for reconsideration is denied.

{¶22} On April 30, 2013, by Judgment Entry, the trial court denied the Reeds' objections and reaffirmed the orders entered by the magistrate.

{¶23} The Reeds now appeal from the April 30, 2013 Judgment Entry of the Stark County Court of Common Pleas and raise three assignments of error.

## ASSIGNMENTS OF ERROR

{¶24} "I. THE COURT'S DECISION FINDING THAT APPELLANT[S] ENGAGED IN A PATTERN OF CONDUCT THAT CONSTITUTED MENACING BY STALKING IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶25} "II. THE COURT'S DECISION PROHIBITING THE APPELLANT[S] FROM POSSESSING, USING, CARRYING, OR OBTAINING ANY FIREARM OR DEADLY WEAPON FOR FIVE YEARS AND REQUIRING THE APPELLANT[S] TO TURN OVER FIREARMS OR OTHER DEADLY WEAPONS TO THE POLICE IF ARBITRARY, UNREASONABLE, UNCONSCIONABLE AND UNCONSTITUTIONAL."

{¶26} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S REQUEST FOR A NEW HEARING WHEREIN THE RECORD WAS INCOMPLETE AND UNAVAILABLE FOR REVIEW BY THE TRIAL COURT ON THE OBJECTION TO THE MAGISTRATE'S DECISION AND IS NOW NOT PRESERVED FOR REVIEW BY THE APPELLATE COURT."

## ANALYSIS

### I.

{¶27} In their first assignment of error, the Reeds contend the trial court's finding they committed menacing by stalking is against the manifest weight and sufficiency of the evidence. We disagree.

{¶28} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013–Ohio–5274, ¶ 23 citing *Peterson v. Peterson*, 5th Dist. Muskingum No. CT2003–0049, 2004–Ohio–4714, ¶ 10, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982).

{¶29} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley*, supra, 2012–Ohio–2179 at ¶ 17–19. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Id. at ¶ 20 quoting *Twearson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); see also *Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA00262, 2012–Ohio–3549, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, supra, 2012–Ohio–2179 at ¶ 19.

{¶30} R.C. 2903.214 governs the filing of a petition for a civil stalking protection order. R.C. 2903.214(C) provides: "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court." To

be entitled to a civil stalking protection order, the petitioner must show by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. 2903.211, against the person seeking the order. See *Tumblin v. Jackson*, 5th Dist. No. 06CA002, 2006–Ohio–3270, ¶ 17.

{¶31} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Olenik v. Huff*, 5th Dist. No. 02–COA–058, 2003–Ohio–4621, at ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this Court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We further note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶32} R.C. 2903.211(A), menacing by stalking, states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the

offender will cause physical harm to the other person or cause mental distress to the other person."

{¶33} The Reeds concede they engaged in a pattern of conduct (Reeds' briefs, page 28), but argue Keith's evidence did not establish he believed the Reeds would cause him physical harm or cause mental distress to him.  It is sufficient for him to establish one or the other.  In *Coleridge v. Tomsho,* 5th Dist. No.2002CA00280, 2003–Ohio–650, we held R.C. 2903.211 was written in the disjunctive; in other words, a petitioner can establish a fear of physical harm *or* mental distress.

{¶34} R.C. 2903.211(D) states in relevant part: (2) "Mental distress" means any of the following: (a) Any mental illness or condition that involves some temporary substantial incapacity; (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶35} Keith and Yvonne testified they have experienced fear and mental distress as a result of the Reeds' actions.  Yvonne has ceased visiting the property altogether.  They have abandoned plans to build on the property and are attempting to sell it.  Their adult children are not allowed on the property due to the Elkins' fears.  The magistrate was in the best position to weigh the credibility of the Elkins' testimony about their fear and mental distress, and the judgment is supported by clear and convincing evidence.

{¶36} As we have frequently observed, "civil stalking protection order cases most often turn on the credibility of the witnesses." *Madison v. Wilborn,* 5th Dist. Stark No. 2011CA00247, 2012-Ohio-2742, ¶ 34; *Kruszynski v. Kruszynski*, 5th Dist. Fairfield

No. 12-CA-133, 2013-Ohio-3355, ¶ 21. We note in this case, however, beyond issues of credibility, the Reeds' admissions of their outrageous conduct, cited throughout the magistrate's findings of fact, amply support the findings of the court below. We disagree with the Reeds' repeated characterization in their brief of the "target shooting;" we have reviewed this record and note George readily acknowledged he has never shot a clay pigeon, "[he] shoots shotgun shells," 12 boxes of 25 shells in a week, into the trees or at the ground. (T. 387). Moreover, Donna admitted the goal of the campaign of harassment is to get Keith to sell his property. (T. 269).

{¶37} We find the trial court did not abuse its discretion in finding the Reeds engaged in a pattern of conduct that constituted menacing by stalking. Keith and Yvonne testified to a pattern of extreme conduct, conceded by Donna and George at the hearing and in their brief, which caused the Elkins to fear physical harm and caused them mental distress. The issuance of the CSPO is not against the manifest weight of the evidence and is supported by sufficient evidence. The Reeds' first assignment of error is overruled.

II.

{¶38} In their second assignment of error, the Reeds argue the court's decision prohibiting the Reeds from possessing, using, carrying, or obtaining any firearm or deadly weapon for five years and requiring them to turn over firearms or other deadly weapons to the police is arbitrary, unreasonable, unconscionable and unconstitutional. We disagree.

{¶39} R.C. 2903.214 provides, in pertinent part, as follows: "(E)(1) After an ex parte or full hearing, the court may issue any protection order, with or without bond, that

contains terms designed to ensure the safety and protection of the person to be protected by the protection order, *including, but not limited to,* a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner * * *. If the court includes a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner * * * in the order, it also shall include in the order provisions of the type described in division (E)(5) of this section." (Emphasis added). Thus, R.C. 2903.214(E) permits the court to issue any protection order containing terms designed to insure the safety and protection of the subject. *Mann v. Sumser,* 5th Dist. Stark No. 2001CA00350, 2002-Ohio-5103, ¶ 34, citing *Spence v. Herbert,* 5th Dist. Licking No. 00CA93, 2001 WL 876231 (July 30, 2001). We find, based upon Keith and Yvonne's testimony about the Reeds' shooting, and the Reeds' admissions regarding the same, the trial court's order regarding firearms and deadly weapons was supported by the evidence.

{¶40} The right to bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). In the analogous example of domestic violence protection orders, other respondents have challenged whether the provision of R.C. 3113.31 "authorizing exclusion of perpetrators of domestic violence from the residences of their victims" violated the "takings" clause of the Fifth Amendment. *Calicoat v. Calicoat,* 2nd Dist. No. 08CA32 2009–Ohio–5869, ¶ 38. In analyzing this issue, the court said:

The protection of victims of domestic violence from further harm has as its purpose the protection of the public welfare, which is a proper exercise of the police power conferred on the General Assembly by Section 1, Article II of the Ohio Constitution. * * * Orders issued pursuant to that section constitute valid exercises of the police power that supersede the constitutional protections against takings of private property on which [appellant] relies.

*Id.* at ¶ 38.

{¶41} The recognition of protection orders as valid exercises of police power that may supersede constitutional protections has been applied to prohibitions against owning and possessing firearms and deadly weapons.  The Third District agreed with the Second District's finding that R.C. 3113.31 constitutes a valid exercise of police power that can supersede constitutional protections in the context of the Second Amendment, and we find the same public welfare analysis applicable here, in the context of a CSPO.  *Clementz-McBeth v. Craft*, 3rd Dist. Auglaize No. 2-11-16, 2012-Ohio-985, ¶ 32.

{¶42} Still, while the potential restriction on the right to bear arms may be a constitutionally valid exercise of police power, it is axiomatic that a restriction in a protection order must be related to specific conduct the restriction seeks to prevent. Although the trial court has broad discretion when imposing restrictions pursuant to a protection order, this discretion is not limitless. *Newhouse v. Williams*,  167 Ohio App.3d 215, 223, 2006 -Ohio- 3075, 854 N.E.2d 565 citing *Maag v. Maag* (Mar. 28, 2002), 3d Dist. No. 16–01–16, 2002 WL 468585. "[R]estrictions must bear a sufficient nexus to the

conduct that the trial court is attempting to prevent." Id.  In *Mann v. Sumser*, supra, we found where the threats involve use of firearms against the subject of a protection order and her family, orders regarding firearms and deadly weapons are warranted.  *Mann v. Sumser*, supra, 2002-Ohio-5103 at ¶ 34.

{¶43} We have previously cited with approval the "nexus test" set forth by the Third Appellate District and held that the "restrictions [in a CPO] must bear a sufficient nexus to the conduct that the trial court is attempting to prevent."  *Boals v. Miller*, 5th Dist. Ashland No. 10-COA-039, 2011-Ohio-1470, ¶ 37, citing *Maag v. Maag*, 3rd Dist. Wyandot No. 16–01–16, 2002 WL 468585 (Mar. 28, 2002), *3.

{¶44} Other districts have also applied the *Maag* nexus test, supra, to analyze whether a condition of a CPO, such as prohibiting the consumption of alcohol or the possession of firearms, is unduly restrictive. See *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2004–Ohio–4080, 860 N.E.2d 789 (9th Dist.); *Sistek v. Gredence*,  11th Dist. Lake No.2005–L–212, 2006–Ohio–4169; *Butcher v. Stevens*, 4th Dist. Athens No. 08CA18, 2009–Ohio–1754; *Doran v. Doran*, 12th Dist. Warren No. CA2009–05–050, 2009–Ohio–5521; and *Hoyt v. Heindell*, 11th Dist. Lake App. Nos.2009–L–151, 2009–L–152, 2010–Ohio–6058. In analyzing whether a sufficient nexus exists to warrant the prohibition of the conduct, the courts look to the evidence in the record to find competent, credible evidence of the conduct the trial court is attempting to prevent. *Boals v. Miller*, supra, 2011-Ohio-1470 at ¶ 38.

{¶45} In the instant case the trial court did not abuse its discretion when in prohibiting the Reeds from possessing firearms because the evidence in the record does support the restriction.  Donna Reed admitted firing her shotgun in frustration,

reacting to the neighbor dispute. The record is replete with competent, credible evidence the Reeds were not acting as responsible "target shooters." This restriction bears sufficient nexus to the conduct the court is trying to prevent.

{¶46} The Reeds' second assignment of error is overruled.

III.

{¶47} In their third assignment of error, the Reeds contend the trial court should have granted a new hearing because one DVD entered as Exhibit G was unavailable and is not preserved for appellate review. We disagree.

{¶48} During the CSPO hearing, Keith entered two DVD exhibits, labeled as G and H; G consisted of portions of videotape put together by the Elkins; H consisted of portions of videotape put together by the Reeds. Both DVDs were played and narrated during witness testimony; both DVDs were made part of the record for our review. As the parties are aware, however, Exhibit G, the DVD consisting of video prepared by the Elkins, is now blank or otherwise unable to be viewed.

{¶49} The Reeds argue the unavailability of Exhibit G means the record is incomplete and prevents review on the merits. They point to App.R. 9(E), which states:

> If any difference arises as to whether the record truly discloses
> what occurred in the trial court, the difference shall be submitted to
> and settled by the trial court and the record made to conform to the
> truth. If anything material to either party is omitted from the record
> by error or accident or is misstated, the parties by stipulation, or the
> trial court, either before or after the record is transmitted to the
> court of appeals, or the court of appeals, on proper suggestion or of

its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

{¶50} Further, the Reeds cite *In re Holmes* as support for their suggestion that we, the Appellate Court, are responsible for "employ[ing] corrective measures" to correct the record in this instance. 104 Ohio St.3d 664, 2004 -Ohio- 7109 821 N.E.2d 568. *Holmes* is, in fact, instructive in this case because the Ohio Supreme Court found an appellate court may direct correction of a record on its own initiative prior to judgment *where the appellant is without fault*, specifically, where the appellant was unaware of the deficient record until the appellate court ruled. *Holmes*, supra, 2004-Ohio-7109 at ¶ 14 citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980). (Emphasis added.) Otherwise, the appellants may be at fault for failing to avail themselves of App.R. 9(C). Id.

{¶51} App.R. 9(C) states:

(1) If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement

within ten days after service of the appellant's statement; these time periods may be extended by the court of appeals for good cause. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.

(2) In cases initially heard in the trial court by a magistrate, a party may use a statement under this division in lieu of a transcript if the error assigned on appeal relates solely to a legal conclusion. If any part of the error assigned on appeal relates to a factual finding, the record on appeal shall include a transcript or affidavit previously filed with the trial court as set forth in Civ.R. 53(D)(3)(b)(iii), Juv.R. 40(D)(3)(b)(iii), and Crim.R. 19(D)(3)(b)(iii).

{¶52} In this case, the Reeds discovered the problem with the DVD upon preparing for objections to the magistrate's decision, as noted in their Motion to Dismiss of March 13, 2013. On appeal, they had the option of availing themselves of App.R. 9(C) in light of their awareness of the problem. The fact that they failed to do so, however, resulted in no prejudice as we are able to discern from the record before us which, absent Exhibit G, fully supports the decision of the magistrate and the trial court.

{¶53} The Reeds' third assignment of error is overruled.

**CONCLUSION**

{¶54} For the foregoing reasons, the three assignments of error of George and Donna Reed are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J. and

Baldwin, J. concur and

Hoffman, P.J. concurs in part and
dissents in part.

*Hoffman, P.J., concurring in part and dissenting in part*

{¶55} I concur in the majority's analysis and disposition of Appellants' first and third assignments of error.

{¶56} I respectfully dissent from the majority's decision to overrule Appellants' second assignment of error. While I agree with the majority's finding a valid nexus exists between Appellants' use of the firearms and the underlying grounds for the issuance of the CSPO, because the restrictions involve a right protected under the Second Amendment, I believe any restrictions on that right must be narrowly tailored to effectuate the purpose sought.

{¶57} To such extent, I find the order requiring Appellants to turn over their firearms or other deadly weapons to the police, coupled with the order denying them the right to possess, use, carry or obtain any firearms or deadly weapon is overly broad and unduly restrictive. Appellants have not been convicted of any criminal offense in their use of the firearms. The order as it now stands prohibits their possession of a firearm while in their own home for purposes of self-defense.

{¶58} While I certainly find limitations on Appellants' possession, use, carrying or, for the matter, display of firearms or deadly weapons on or near their property or while in the presence or vicinity of Appellees, whether for target shooting or otherwise, would constitute valid restrictions, I find the order issued herein unduly restrictive.

{¶59} I would sustain the assignment of error, in part, and reverse and remand this portion of the trial court's decision for modification.