OPINION
{¶ 1} Defendant-appellant Rodney Fitzgerald Sanders appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count domestic violence, a felony of the fourth degree, in violation of R.C. 2919.25. The plaintiff-appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} Late in the evening of July 17, 2005, Glenda Knerr was getting ready for bed when she heard a knock on her door. She answered the door to see two of the Sanders' young children, ages 6 and 7, at the door. The Sanders lived just across the alley from the Knerr's, and these children played with two of Knerr's children who were the same ages. The children asked Knerr to call 911 for them. When the woman asked them why, they told her, "Because my dad is beating on my mom." Knerr immediately invited the kids inside, and called 911. (T. at 119-123).
 {¶ 3} After having made the 911 call, Knerr looked out from her garage towards the Sanders residence, and saw Natalie at the back door of that residence. Knerr waved her over, and Knerr immediately saw that Natalie's white blouse was red from her bleeding. Knerr invited Natalie inside, who told her that her third child, a baby, was still in the house. Knerr then sent her husband over to get the baby while she tended to Natalie. (Id. at 124).
 {¶ 4} Upon seeing that Natalie was bleeding from a wound to the back of her head, Knerr called 911 once again to report her injury. Canton Police Officer Scott Fout arrived shortly thereafter, and spoke with Natalie. Knerr overheard the conversation, and heard Natalie explain what had happened to her and who was responsible for her injury. Paramedics soon arrived at the Knerr residence, and Knerr overheard Natalie tell Justin Jurovcik the same information — that her husband had hit her in the head with a full beer bottle. Knerr observed that Natalie was shaken up, and did not detect an odor of beer or alcohol on her. Knerr later saw the police arrest Sanders that night. (Id. at 124-127; 130). Officer Fout responded to the Knerr residence as a possible domestic violence call. He understood that the assault occurred at the victim's residence, but that the victim was at a neighbor's. When he entered the Knerr residence, Fout saw Natalie sitting in the dining room. Natalie was holding a white towel to the rear of her head and neck where she was bleeding. Fout immediately called for the assistance of paramedics due to the severe laceration to that part of Natalie's head. Natalie was very upset, but still told Fout what had happened. In recounting the assault, Natalie did not mention anyone else being in the house. Fout also did not detect the odor of alcohol on Natalie's breath. After speaking with Natalie, Fout went to the Sanders residence to arrest appellant. (T. at 134-139; 142-143; 147; 148; 151).
 {¶ 5} After appellant was arrested at the residence, he admitted to Fout that he had gotten into an argument with his wife earlier in the evening. This verbal argument, however, escalated into a pushing match in the kitchen. After they pushed each other, appellant claimed that he left the house and went for a walk. Appellant stated that he had no injuries as a result of the altercation with his wife. (Id. at 143; 153-154; 155).
 {¶ 6} Jurovcik was one of the responding paramedics, and initially treated and spoke with Natalie. Natalie told him that she wanted to go to the hospital, and given the seriousness of her injury, Jurovcik had her placed in an ambulance. Once in the ambulance, Jurovcik asked Natalie what had happened. Natalie told him that she had been hit with a full bottle of beer, and identified the person who had assaulted her. Jurovcik noted that her injury was consistent with what she said. The paramedic also did not notice any odor of beer or alcohol on Natalie. (T. at 158-161; 164; 165).
 {¶ 7} Natalie testified at trial. Natalie admitted that she was injured the night of July 17, 2005 and ended up at the Knerr's residence when the police and paramedics arrived. She claimed, however, that she was drunk and had been popping pills. Natalie nonetheless maintained that she did not tell anyone that her husband had assaulted her, but that Glenda Knerr, the police officer, and the paramedic told her that he did it. When interviewed by the police officer at the hospital, Natalie claimed that she told him that there were other people at her home that night, and that she admitted to him that she had been "drinking and popping pills." (Id. at 184-185; 187-190).
 {¶ 8} Natalie admitted to signing the domestic violence report forms and complaint against her husband, but claimed that she had not read the forms. (T. at 192-93; 194). Natalie also reaffirmed that she still loves her husband and wanted him back home. She has talked with appellant since the assault, and admitted that they both need marriage counseling. Finally, Natalie testified that she was the victim for appellant's 2005 conviction for domestic violence. (Id. at 194-197).
 {¶ 9} Natalie claimed that she was trying to pick an argument with her husband that night, and that he eventually left the house because he did not feel like arguing. Natalie asserted that there were several neighborhood boys in the house during the argument, and one used to be at a halfway house. Natalie testified that she was upset with appellant, but not mad enough to get him arrested again. After she was hit with the beer bottle in her alleged drunken state, Natalie told her kids to go to the neighbor's house to call for an ambulance because she was throwing up. Natalie stood on her back porch to watch her kids as they went to the Knerr's home, but remained behind initially because her baby was asleep in the house. Natalie maintained though that she never told the Knerrs that appellant hit her with the beer bottle. She also claimed that she could not remember how she got the laceration because she was drunk and popping pills. (T. at 201-205).
 {¶ 10} On rebuttal, Officer Fout testified that Natalie told him what had happened that night with her husband. Natalie told the officer that she and her husband were arguing, and the argument turned physical. Appellant eventually struck Natalie with a beer bottle. The officer also testified that he filled out the domestic violence form based on information provided him by Natalie. Before having her sign the form, Fout read back to her what he had written to ensure accuracy. Instead of making any corrections, Natalie signed the form and complaint. (T. at 210-212).
 {¶ 11} Appellant did not testify in his defense at trial.
 {¶ 12} The jury found appellant guilty of the charged offense, and the trial court proceeded with sentencing after convicting him. The court imposed a prison term of seventeen months.
 {¶ 13} It is from that conviction and sentence that appellant appeals, raising the following assignment of error for our consideration:
 {¶ 14} "I. THE JURY VERDICT FINDING APPELLANT GUILTY OF DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION."
 I. {¶ 15} In his sole assignment of error appellant contends that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 16} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 17} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 18} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 19} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v.Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 20} To find appellant guilty of domestic violence the jury would have to find that appellant knowingly caused or attempted to cause physical harm to a family or household member. R.C.2919.25(A). A spouse is a "family or household member." R.C.2919.25(F) (1) (a). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration". R.C. 2901.01(A) (3).
 {¶ 21} The parties do not dispute that the victim was injured and taken to the hospital for treatment. (T. at 189; 200). The dispute centers upon the fact that the victim claimed appellant did not cause the injury during her testimony at trial. However, substantive evidence apart from the victim's statements was introduced to independently establish that appellant was the person who injured the victim.
 {¶ 22} The State introduced two 991 calls made by Glenda Knerr, photographs of the injuries to the victim, and the EMS run report. (T. at 123; 125; 162-63). Thus, the jury could test the credibility of the victim's recantation by reference to this evidence which established that the victim was injured. In other words, the jury had every right to consider the recantation as dubious in light of the demonstrated physical evidence of injury depicted in the evidence. State v. Kelly, 8th Dist. 85662,2006-Ohio-4879 at ¶ 31. Further Ms. Knerr overheard the victim tell the police and paramedics that appellant caused the injuries. (T. at 124-27; 130). The police officers and the paramedics testified that the victim identified her attacker. (T. at 142-43; 147; 161). Appellant admitted that he and the victim had an argument that escalated into a pushing match. (T. at 143; 153-54; 155). However, he denied that he had struck the victim or caused her any physical injuries. (Id.).
 {¶ 23} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 24} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 25} Viewing this evidence linking appellant to the domestic violence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of domestic violence.
 {¶ 26} We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 27} Although the victim testified that she could not recall what happened because she was drunk and popping pills and denied that she had told anyone that appellant was responsible for her injuries, the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v.Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing Statev. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 28} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused physical harm to his spouse.
 {¶ 29} Accordingly, appellant's conviction for domestic violence was not against the manifest weight of the evidence.
 {¶ 30} Appellant's sole assignment of error is overruled.
 {¶ 31} The judgment of the Stark County Court of Common Pleas is affirmed.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.