[Cite as *State v. France*, 2023-Ohio-2129.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 22CA39 |
| | : | |
| CALVIN FRANCE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Richland County Court
                                     of Common Pleas, Case No. 22CR051N


JUDGMENT:                            AFFIRMED


DATE OF JUDGMENT ENTRY:              June 26, 2023


APPEARANCES:


For Plaintiff-Appellee:                   For Defendant-Appellant:

GARY BISHOP                               RANDALL E. FRY
RICHLAND CO. PROSECUTOR                   10 West Newlon Place
CHASE E. BAKER                            Mansfield, OH 44902
38 South Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1} Appellant Calvin France appeals from the May 5, 2022 Sentencing Entry of the Richland County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following evidence is adduced from the exhibits and testimony introduced at appellant's jury trial.

{¶3} Jane Doe and appellant have been in a relationship for 8 years and have 4 children together.[1] On December 24, 2021, Jane, appellant, and the 5 children lived together with appellant's father in a home in Mansfield.

*911 call and bodycam footage*

{¶4} Jane Doe called 911 and the recording was played at trial as appellee's Exhibit 1. On the recording are two female voices; Jane identified her own voice as the one yelling "You fucking hit me; you hit me with a rock; I can't breathe; he came in the bathroom and was hitting me in front of my kids."

{¶5} As Jane called 911, appellant had already fled from the scene with his mother.

{¶6} Officers Young and Perry of the Mansfield Police Department responded. Jane Doe told officers she was in the bathroom bathing the children when appellant came into the room, upset. Appellant also threw miscellaneous items around the house. Jane and appellant argued; appellant struck her in the face and pulled her hair.

---

[1] Paternity of a fifth child is undetermined.

{¶7} Perry asked which side appellant struck her on; Jane said both sides of her face hurt and were "burning." She told appellant to leave. The two ended up outside where appellant picked up rocks and threw them at her.

{¶8} Appellant also threatened to kill Jane, and she told Perry she took the threat seriously.

{¶9} The officers' interaction with Jane, including her statements, were recorded on Perry's bodycam and the video was introduced as appellee's Exhibit 2.

{¶10} While at the scene, Perry looked up appellant's criminal history, learned appellant had three prior domestic violence convictions, and investigated the matter as a potential felony. Jane completed an affidavit in support of probable cause for a domestic violence arrest, writing that appellant struck her with a closed fist, pulled her hair, and threw rocks at her. She complained of pain in her face and head. Perry also urged Jane to follow through with obtaining a protection order through Legal Aid, but she did not do so.

{¶11} Perry took photos of Jane which were introduced as appellee's Exhibit 8. Perry testified he did not observe visible injuries but did not find this fact dispositive of the domestic violence allegation. Jane declined medical treatment.

{¶12} Perry also photographed items appellant threw around the household, such as a comb, medicine, tape, and a child's backpack; photos of these items were introduced as appellee's Exhibits 9, 10, and 11.

{¶13} When asked whether he was surprised that Jane minimized the incident during her trial testimony, Perry said he was not surprised at all because minimizing or recanting after a domestic violence arrest is frequently part of the cycle of violence; often

victims don't cooperate with police or prosecution at all. Perry noted the 911 dispatcher said Jane was so upset during the call that it was very difficult to understand her. Perry and Young arrived on the scene within 10 minutes of the 911 call and found Jane still very distressed.

{¶14} Upon cross-examination Perry agreed Jane said she wanted appellant arrested that night.  When asked whether it was possible for someone to retaliate against a romantic partner by falsely initiating a domestic violence arrest, Perry acknowledged it was possible but rare.

*Jane's trial testimony*

{¶15} Jane was appellee's first witness at trial. She acknowledged police came to her residence on Christmas Eve of 2021, but claimed to have no memory of what she told them. The prosecutor played the 911 call and Jane acknowledged it was her voice on the call.  She was also surprised when the prosecutor showed her the bodycam video; she acknowledged that on the video she alleged appellant struck her, but claimed she has mental problems and tends to overexaggerate. T. 213.  Jane also said that when she gets mad, she "wants that person to go through some stuff." T. 213.

{¶16} Upon cross-examination, Jane said she was angry that appellant was napping and not helping her prepare for Christmas. They argued and appellant wanted to leave.  Jane testified she decided if appellant wasn't going to be with them on Christmas Eve, he should go to jail. When asked about the 911 call, Jane said she exaggerated appellant's actions.  She denied appellant struck her.

{¶17} Before redirect, the prosecutor asked the trial court's permission to treat Jane as a hostile witness, but the court declined at that time.

{¶18} The prosecutor asked Jane why, if she needed help with five young children, she wanted appellant to go to jail. Jane responded she couldn't remember anything that happened, but she might have hit appellant. The prosecutor asked why she clearly related what happened when police asked her on the bodycam video, but she couldn't remember anything now. Jane responded that she was "just saying stuff to get [appellant] locked up." T. 222.

{¶19} Jane acknowledged she had nowhere to live at the time of trial and was staying in a shelter with the children. When asked whether she would be surprised to know appellant called her over twenty times from jail, Jane said she "didn't know." T. 223.

*Defense case: appellant's mother blames Jane*

{¶20} Appellant's mother was the sole defense witness and testified appellant called her on Christmas Eve to come pick him up because Jane was "acting up" and told him to get out of the house. The mother also testified she was present during the argument and denied appellant struck Jane; she claimed it was Jane who tried to hit appellant, but the mother broke up the fight. The mother testified she was in the hallway when Jane and appellant argued in the bathroom and "[Jane] started it." T. 281-282.

{¶21} When asked why she didn't tell stay on the scene to explain to police that Jane was at fault, the mother said she didn't know what to do.

*Indictment, trial, conviction, and sentence*

{¶22} Appellant was charged by indictment with one count of domestic violence pursuant to R.C. 2919.25(A), a felony of the third degree [Count I], and one count of domestic violence pursuant to R.C. 2919.25(C), a misdemeanor of the first degree [Count

II]. The indictment further states appellant has three previous domestic violence convictions which enhance the penalty levels of the instant domestic violence offenses.

{¶23} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence but the motion was overruled. Appellant was found guilty as charged, and the jury further found appellant had three prior convictions of domestic violence. The trial court sentenced appellant to a prison term of 36 months upon Count I to be served concurrently with a jail term of 180 days upon Count II.[2]

{¶24} Appellant now appeals from the trial court's sentencing entry of May 5, 2022.

{¶25} Appellant raises one assignment of error:

**ASSIGNMENTS OF ERROR**

{¶26} "THE EVIDENCE IN THIS CASE WAS [INSUFFICIENT] AS A MATTER OF LAW TO SUPPORT A CONVICTION OF THE CHARGES IN THE INDICTMENT AND AS A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION AND THE 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

**ANALYSIS**

{¶27} In his sole assignment of error, appellant argues his domestic violence convictions are not supported by sufficient evidence because Jane Doe testified appellant

---

[2] The trial court also found appellant in direct contempt three times for his behavior at sentencing. The trial court imposed an aggregate additional jail term of 10 days upon the finding of direct contempt.

did not hit her and that she only called 911 because she was angry and wanted appellant to go to jail.  We disagree.

{¶28} Appellant was convicted of one count of domestic violence pursuant to R.C. 2919.25(A) and one count of domestic violence pursuant to R.C. 2919.25(C). Those sections state as follows:

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member ["physical harm domestic violence"].
>
> * * * *.
>
> (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member ["threat domestic violence"].

{¶29} We review a claim of insufficient evidence by examining the evidence presented at trial to determine whether, if believed, the evidence would convince the average mind of the accused's guilt beyond a reasonable doubt. *State v. Sanders*, 5th Dist. Stark No. 2005-CA-00269, 2006-Ohio-5355, ¶ 16. The relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.,* citing *State v. Jenks*, 61 Ohio St.3d 259 (1991).  Sufficiency of the evidence is tested at trial by a motion for acquittal pursuant to Crim.R. 29(A) and the trial court must determine whether the state met its burden to produce evidence on each element of the offenses charged, sufficient for the matter to be submitted to the jury.  *Id.,* ¶ 17.

{¶30} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), syllabus.

{¶31} In the instant case, appellant was charged with both physical harm domestic violence and threat domestic violence. To find appellant guilty of physical-harm domestic violence, the jury would have to find that appellant knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). A "family or household member" includes the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent. R.C. 2919.25(F)(1)(b). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration". R.C. 2901.01(A)(3).

{¶32} We have previously found the offense of threat domestic violence requires fear inspired by the threat of force. *State v. Bilyk*, 5th Dist. No. 17-CA-79, 2018-Ohio-1802, 111 N.E.3d 1195, ¶ 15, citing *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, 860 N.E.2d 789, ¶ 16 (9th Dist.). Where the trial court has the opportunity to view the demeanor of the victim and the state of the residence on the date in question, including evidence the victim was crying and distressed and the house was in disarray, we have found sufficient credible evidence to support the trial court's guilty verdict upon an offense of threat domestic violence. See, State v. Turner, 5th Dist. Licking No. 01CA00061, 2001-Ohio-7037, unreported (Dec. 31, 2001).

{¶33} At trial in the instant case, appellee introduced evidence of Jane's 911 call and the bodycam video depicting her interaction with police. When Jane minimized the

allegations and claimed not to remember what happened, the prosecutor confronted her with the 911 recording and the bodycam video. The jury could directly test the credibility of the victim's recantation by reference to this evidence. See, *State v. Sanders*, supra, 2006-Ohio-5355, ¶ 22.

{¶34} The record does contain evidence in addition to Jane's recantation. The police officers testified to Jane's demeanor within 10 minutes of the 911 call and the statements she made verbally and in writing; she was visibly upset and told them appellant struck her in front of the children. Appellant fled from the scene before police arrived; at the prosecutor's request, the jury was given a flight instruction permitting them to infer consciousness of guilt. Appellant's mother's testimony that Jane was the aggressor was confusing and may have been rejected by the jury.

{¶35} Ultimately the credibility of the witnesses and evidence were for the jury to determine. In *Sanders*, supra, at ¶ 23, we cited *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984) when noting "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758 (February 10, 1982). Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case

will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶36} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. *State v. West*, 5th Dist. No. 16 CA 11, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 50. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶37} Viewing the evidence in a light most favorable to appellee, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant committed domestic violence. We find appellee met its burden of production regarding each element of Counts I and II and appellant's convictions are supported by sufficient evidence. Although Jane minimized appellant's actions on Christmas Eve 2021, variously claiming not to remember what happened or that it was she who struck appellant, or she just wanted him to go to jail, the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. See also, *State v. Johnson*, 5th Dist. Stark No. 2002CA00363, 2003-Ohio-1699, ¶ 19 [despite victim's recantation, appellant's conviction was supported by, e.g., tape of 911 call, victim's statements from night of incident, and officers' testimony regarding interaction with victim]; *State v. Hughes*, 5th Dist. Tuscarawas No. 2014 AP 07 0030, 2015-Ohio-1173, ¶

22, citing *State v. Kelly,* 8th Dist. Cuyahoga No. 85662, 2006–Ohio–5902, ¶ 31 [despite victim's recantation, record contains photos and victim's statements taken by deputies at the scene; when viewed in light most favorable to state, provide sufficient evidence to support domestic violence conviction].

{¶38} Appellant's convictions are supported by sufficient evidence.

## CONCLUSION

{¶39} The sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.